United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECATUER CARTER,<br><br>      Plaintiff,<br><br>  v.<br><br>JAI-PUT ENTERPRISE INC., et al.,<br><br>      Defendants. | Case No.  18-cv-06313-DMR<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 46, 47 |

Plaintiff Decatuer Carter brings employment-related claims against Defendants Jai-Put Enterprise Inc. dba Junk King ("Junk King") and Krishna Vepa, alleging violations of the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the California Labor Code, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and California common law.  [Docket No. 1 ("Compl.").]  Carter and Defendants both filed motions for summary judgment. [Docket Nos. 47 ("Pltf. Mot."); 48 ("Def. Opp."), 50 ("Pltf. Reply"), 46 ("Def. Mot."), 49 ("Pltf. Opp."), 51 ("Def. Reply").]  The court has determined that this matter may be determined on the papers pursuant to Local Rule 7-1(b).

For the reasons stated below, Carter's motion is granted in part and denied in part. Defendants' motion is denied.[1]

## I.        BACKGROUND

### A.        Junk King's Operations

Junk King is as a franchise of Junk King Franchise Systems.  [Docket No. 49-2, Declaration of Jocelyn Burton ("Burton Decl."), Ex. 2, Deposition of Krishna Vepa ("Vepa Depo.") at 30:9-10.] The company operates exclusively in Northern California.  [Docket No. 46-3, Declaration of

---

[1] As explained below, it is not clear whether Carter is seeking punitive wages for his Labor Code and UCL claims.  If he is, then Defendants' motion is granted with respect to those claims only.

Krishna Vepa ("First Vepa Decl.") ¶ 2]. Vepa is the president and CEO of Junk King. *Id.* The company employs drivers and navigators to drive Junk King-branded trucks around the Bay Area to pick up clients' personal property and dispose of it at dumps or recycling facilities. *Id.* Typically, Junk King assigns a single driver to each route, but sometimes also assigns a navigator when the work is difficult. *Id.* The daily schedules for drivers and navigators "var[y] depending on the specific job and locations, traffic conditions, dump wait times, and other factors." *Id.* ¶ 3. Employees clock in every morning through Junk King's online web application, JunkWare. *Id.* ¶ 8. The driver and navigator teams receive their pickup schedule through JunkWare. *Id.* ¶ 9.

According to Vepa, employees manage their own time based on the "honor code." First Vepa Decl. ¶ 8. Employees "go out on their routes for the day, unsupervised, and in control of their lunch and break times." *Id.* ¶ 9. Vepa claims that both drivers and navigators have "a lot [of] control over their time and schedule." *Id.*

**B.      Junk King's Meal and Rest Break Policies**

Vepa represents that "the nature of the work prevents employees from being relieved of all duty for their 30-minute lunch break as required under California law." First Vepa Decl. ¶ 3. As a result, Junk King provides its drivers and navigators with an "on-duty meal period" option for their lunch break, which is reflected in Junk King's On Duty Meal Period Agreement:[2]

> Jai=Put Enterprise Inc. ("the Company") & _____ ("Employee") Agree that the nature of the Employee's work as Junk Haul-away worker at Jai-Put Enterprise Inc on the truck, as driver or Navigator usually prevents Employee from getting relieved in taking a 30 minute uninterrupted meal-break.
>
> ***The Employee agrees as an alternate, to an on-duty meal break whenever the employee activity during the work day prevents them from to have an uninterrupted meal-break during work day.*** In this case the employee will be compensated for such meal break periods at the rate of one hour of pay at the employee's regular rate.
>
> Employee understands that if a 30-minute uninterrupted meal period is provided, it will not be an on-duty meal break, and employee will not be compensated at all times.

---

[2] The text is copied directly, including any typos or other errors.

United States District Court
Northern District of California

> Employee understand an on-duty meal break maybe revoked at any time, by providing company with a notice of revocation

First Vepa Decl., Ex. A.  Carter signed the On Duty Meal Period Agreement on November 29, 2016. *Id.*  Vepa represents that the agreement is voluntary.  First Vepa Decl. ¶ 4.

Junk King also provides a Policy on Best Practices handout that explains company policy regarding, among other things, meal and rest breaks:[3]

> Meal Breaks, & Rest policy
>
> a.   JKCC has flex-time policy for lunch breaks.  Remember, you have agreed to on-time meal breaks. 1-hour break is allowed, inclusive of drive time when work duration exceeds 5 hours, of which at least 30-minute seated meal break is suggested.  It is expected that your choice of a stop for eating be located along work route.  toilet breaks are not included in these calculations, but passed on past experience reasonable (eg 10 to 15 min enroute) are OK.  Finally, lunch is expected to be taken during regular hours and not end of the shift-that is not lunch
>
> b.   Clock i/o for Lunch generally not later than 5 hrs from start for 1 hr.  Grace time of 45 min is allowed in case being stick due to the job.  Inform management by text or call
>
> c.   All employees especially drivers are encouraged to take a break during daily truck operations.  When possible ensure that you take a break and stretch, to keep alert on the job.  Two more 15-minute refresher breaks are encouraged.  Being alert and avoiding accidents is highly encouraged

First Vepa Decl., Ex. B.

### C.   Junk King's Telephone Plan

Junk King implemented a telephone purchase plan for employees in January 2017.  First Vepa Decl. ¶ 12.  Relevant portions of Junk King's Telephone Policy are excerpted below:

> It is the responsibility of all employees who are required to have a cell phone for their job duties to ensure compliance with this policy. . . . Cell phones are required by employees in some positions in the company in order to maintain contact with customers, vendors, supervisors, and other employees. In general, this includes, Sales, Marketing, and Drivers.
>
> …

---

[3] The text is copied directly, including any typos or other errors.

United States District Court
Northern District of California

> The phone referred to in this document is an iPhone 7, purchased in name of Krishna Vepa, President Junk King Contra Costa, from Verizon Wireless. The phones are purchased by Krishna Vepa on behalf of Junk King Contra Costa for subsequent use by company employees.
>
> …
>
> All those employees who voluntarily participate in this telephone scheme, will consent to payroll deduction towards repayment of company funded equipment purchase, and co-shared data, voice plan charges by Verizon during non-business hours, for personal use.
>
> . . .
>
> Following charges will be deducted towards the usage of the phone
>
> a. Equipment charges to be paid by employee in 24 monthly installments as determined by Verizon fee statement
>
> b. 5GB of free data will be included with each phone. It is expected that this will cover usage during work hour, and off work personal use. All users will be enabled with data metering to keep track of usage. Additional use will be charged to user at prevailing Verizon excess charge rate. Employee is encouraged to monitor usage at all times.
>
> c. Monthly line access fee[.]  The phone is being provided as a co-shared service, and in principal will be paid in equal amounts by both (employer and employee). The amount will be determined by charges levied by Verizon.

First Vepa Decl., Ex. E.  Carter signed the Telephone Policy on January 23, 2017.  *Id.*  He testified that employees were required to purchase a cell phone through the plan as a condition of employment.  [Burton Decl., Ex. 2, Deposition of Decatuer Carter ("Carter Depo.") at 75:9-18.]  He stated that Vepa told employees that if they did not sign the Telephone Policy, they would lose their job.  Carter Depo. at 79:4-25.  Payment for a phone was deducted from his wages.  Carter Depo. at 71:13-18.  When he was terminated by Junk King, he kept the cell phone.  Carter Depo. at 122:17-18.  Vepa testified that he paid Carter the amount that had been deducted from his wages to purchase the cell phone, while Carter stated that he has still not been reimbursed.  Carter Depo. at 122:19-123:1.

### D.    Carter's Employment

Carter worked for Junk King as a navigator from November 30, 2016 to August 14, 2017. Vepa Decl. ¶ 5.  According to Carter, Vepa was the only person in a management position during

4

1    Carter's time there.  Carter Depo. at 45:10-15.  Carter and the other employees were assigned routes

2    and trucks every morning through the JunkWare app.  Carter Depo. at 37:19-38:2, 39:6-40:3; Vepa

3    Decl. ¶ 8.  As a navigator, Carter was always paired with a driver.  Carter Depo. at 40:10-13.  The

4    team completed jobs as they were listed in the app, and Carter was responsible for calling customers

5    to give them estimated arrival times.  Carter Depo. at 36:17-24, 40:23-41:14.  Once the team

6    completed a job, Carter would log the type and amount of items removed in the app, and report how

7    the items were discarded (e.g., "recycled").  Carter Depo at 41:15-42:4. The team sometimes did

8    not know what or how much they would be picking up, and they would have to make unscheduled

9    drop-offs at a dump or recycling center.  Carter Depo. at 42:5-16.  Occasionally, the trucks had

10   maintenance issues that would further delay the route.  Carter Depo. at 42:17-24.

11   According to Carter, he did not discuss meal and rest breaks with Vepa when he started

12   working for Junk King.  Carter Depo. at 45:18-24.  He claimed that he did not receive an employee

13   manual at that time.  Carter Depo. at 53:12-14.  Carter acknowledged that he did receive and sign a

14   copy of the On Duty Meal Period Agreement.  Carter Depo. at 46:18-47:21.  He represented that he

15   understood the agreement meant that he would be paid for an hour of work if he did not receive an

16   off-duty lunch break, and that he would not be paid if he was able to take an uninterrupted 30-minute

17   break.  Carter Depo. at 49:14-51:5. However, he testified that he did not understand that he could

18   revoke the agreement at any time.  Carter Depo. at 51:18-20.

19   Carter asserted that he did not take any rest breaks during the day, except when a client asked

20   him to take a break.  Carter Depo. at 61:25-62:4, 62:10-15.  He also did not take any meal breaks

21   during the day and would eat after he clocked out for the evening.  Carter Depo. at 65:17-23.  He

22   testified that Vepa told employees, "If you're not working, you're not making me money, so if

23   you're not doing your job, you're not doing anything."  Carter Depo. at 62:6-9.  While he was on

24   route during the day, Vepa would "call[] every . . . 20 to 30 minutes, asking and seeing where we

25   were."  Carter Depo. at 61:15-21, 63:22-25.  Carter stated that he stopped taking meal and rest breaks

26   because of these constant calls and because he was pressured to work through his meal breaks.

27   Carter Depo. at 65:12-66:3, 67:13-14.  Carter also testified that he frequently worked more than

28   eight hours a day.  Carter Depo. at 95:1-2, 96:18-22.  However, he was told to clock out so that his

United States District Court
Northern District of California

1   time records would not reflect his overtime even though he was required to keep working.  Carter

2   Depo. at 95:1-6, 106:20-107:5, 147:15-20, 147:22-148:8.

3        Carter stated that he first discussed meal breaks with Vepa around January 2017.  Carter

4   Depo. at 57:12-58:12. He told Vepa, "[E]very man needs a meal break, and every person needs a

5   break," particularly given the physical demands of the job.  Carter Depo. at 57:18-21.  According to

6   Carter, Vepa just replied, "Why are you asking me?"  Carter Depo. at 58:10-13.  Carter testified that

7   after that conversation, he began receiving less desirable routes.  Carter Depo. at 58:23-59:5.  Carter

8   also made other complaints about his workplace conditions, including Junk King's practice of hiring

9   day laborers and various safety conditions on the job, such as being exposed to needles, mold, and

10  other health hazards.  Carter Depo. at 112:7-113:12, 114:8-117:10, 117:15-118:17.

11       Carter was fired on August 14, 2017.  First Vepa Decl. ¶ 13.  According to Vepa, Carter had

12  received several warnings for routinely showing up late to work.  *Id.* ¶ 13.  Vepa testified that

13  sometimes Carter would finish working but not clock out until much later. *Id.* ¶ 8.  Vepa also raised

14  an issue regarding the rate that Carter's team had charged a customer, and Carter was

15  "unresponsive" to Vepa's concerns.  *Id.* ¶ 13.  Vepa testified that he gave Carter a check for his final

16  wages.  *Id.* ¶ 13.  Carter asserts that he was terminated in retaliation for complaining about the

17  conditions of his employment.  Carter testified that he has never been paid for his last two weeks of

18  work.  Carter Depo. at 160:8-23.

19       Carter brings claims for (1) failure to provide meal and rest breaks as required by Labor

20  Code §§ 226.7, 512; (2) failure to pay overtime in violation of the FLSA; (3) failure to pay overtime

21  as required by Labor Code § 510; (4) failure to timely pay wages in violation of Labor Code § 204;

22  (5) failure to furnish complete and accurate itemized wage statements as required by Labor Code §

23  226(a); (6) violations of Labor Code §§ 201, 202, and 203 for failing to timely pay wages upon

24  termination; (7) unlawful deductions from his wages in violation of Labor Code § 221; (8) failure

25  to reimburse for business expenses as required by Labor Code § 2802; (9) retaliation in violation of

26  Labor Code § 98.6; (10) retaliation in violation of Labor Code § 6310; (11) wrongful discharge in

27  violation of public policy; and (12) violations of the UCL.

28

United States District Court
Northern District of California

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id.* at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## III.     DISCUSSION

### A.     Missed Meal and Rest Breaks

Defendants move for summary judgment on Carter's claims for missed meal and rest breaks. Carter cross-moves for summary judgment on his first claim for failure to provide meal breaks.

United States District Court
Northern District of California

1

### 1.   Meal Period Agreement

The parties do not dispute that Carter signed Junk King's On Duty Meal Period Agreement or that he was paid his usual hourly rate for his on-duty meal periods.  Carter moves for summary judgment on his meal break claim on the basis that the On Duty Meal Period Agreement violates California law.  Defendants also move for summary judgment on Carter's meal break claim, although their argument on this claim is unclear.  They seem to argue that Carter was properly compensated under a lawful on-duty meal period agreement and that therefore there is no liability even if he never took off-duty meal breaks.  To the extent that Defendants' argument is instead that Carter was properly provided off-duty meal breaks notwithstanding the On Duty Meal Period Agreement, that argument is addressed in the next section.

In general, California law requires employers to provide non-exempt employees with one 30-minute meal break after no more than five hours of work, and a second meal break after no more than ten hours of work.  Cal. Labor Code § 512; *see also* IWC Wage Order No. 9-2001, section 11(A).[4]  An employer satisfies this requirement "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040, 273 P.3d 513, 536–37 (2012).  However, meal periods where the employee remains "on duty" are permitted where (1) the "nature of the work prevents an employee from being relieved of all duty"; (2) the parties agree in writing to have on-duty, paid meal periods; and (3) the agreement states that the employee may, in writing, revoke the agreement at any time.  Cal. Code Regs. tit. 8, § 11040, subd. 11(A); IWC Wage Order. No 9-2001, section 11(C).

It is the employer's burden to "establish[] the facts that would justify an on-duty meal period."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 959 (9th Cir. 2013) (citation omitted).  The Department of Labor Standards Enforcement ("DLSE") laid out five non-exhaustive factors to consider when deciding whether the "nature of the work" exception applies to a particular job:

---

[4] IWC Wage Order No. 9-2001 applies to the transportation industry.

United States District Court
Northern District of California

> (1) [T]he type of work, (2) the availability of other employees to provide relief to an employee during a meal period, (3) the potential consequences to the employer if the employee is relieved of all duty, (4) the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal period, and (5) whether the work product or process will be destroyed or damaged by relieving the employee of all duty.

DLSE Opinion Letter 2009.06.09 at 7.  For example, DLSE concluded that employees who transport hazardous materials are covered by the "nature of the work" exception because federal regulations require them to attend to their vehicles at all times.  *Abdullah*, 731 F.3d at 959-60 (citing DLSE Opinion Letter 2009.06.09 at 8).

Carter argues that Defendants have not met their burden to show that the "nature of the work" exception applies to Carter's position.  In response, Defendants present testimony from Vepa about the kind of job contingencies that render off-duty meal periods impractical.  [Docket No. 48-1, Declaration of Krishna Vepa ("Second Vepa Decl.").]  For example, the time to complete a given route varies depending on the location and size of the jobs on the route, traffic conditions on a particular day, traffic and delay at dump yards, and driver and truck availability.  Second Vepa Decl. ¶ 3.  According to Vepa, it is impossible to schedule another employee to drive out to a particular job site and relieve the driver and/or navigator of their duties in order to take a meal break.  *Id.* ¶ 6.  While Carter is correct that it is ultimately the employer's burden to establish that the nature of the work prevents off-duty meal periods, the issue cannot be decided on summary judgment because there is a genuine issue of material fact as to  whether it was possible for Carter to take off-duty meal periods within the first five hours of work.  The court cannot weigh the parties' conflicting evidence on this issue at this stage of litigation.

Accordingly, Carter's motion is denied as to his meal break claim.  Defendants' motion is denied to the extent that it relies on a ruling as to the validity of the On Duty Meal Break Agreement.

### 2.    Rest Breaks

Defendants move for summary judgment on Carter's rest break claim, arguing that drivers and navigators were properly provided the opportunity for rest breaks during the day and that an employer is not obligated to ensure that rest breaks are actually taken.  They further argue that Carter

United States District Court
Northern District of California

1    has offered no corroborating evidence for his testimony that he was not provided rest breaks.[5]  Carter

2    responds that he has raised a genuine issue of fact as to whether he was permitted to take rest breaks.

3            California law requires that employers permit all employees to take a rest period of ten

4    minutes for each four hours of work.  IWC Wage Order 9-2001, section 12(A).  Employers must

5    "authorize and permit all employees to take rest breaks, which insofar as practicable shall be in the

6    middle of each work period." Cal. Code Regs., tit. 8 § 11090.  While employers are required to make

7    meal and rest breaks available, they do not have to ensure that employees actually take breaks.

8    *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 953 (N.D. Cal. 2016).  To survive

9    summary judgment on a meal or rest break claim, "[a]n employee must show that the employer

10   actually prevented the employee from taking breaks; mere proof of knowledge that the employee

11   was forgoing breaks is insufficient."  *Reece v. Unitrin Auto & Home Ins. Co.*, Case No. 11-cv-

12   03960-EJD, 2013 WL 245452, at *5 (N.D. Cal. Jan. 22, 2013).

13           In this case, Carter testified that his job required him to be out of the office all day, where

14   Vepa was not physically with him.  Carter Depo. at 60:12-14, 60:19-61:12.  He stated that Vepa

15   would call him every 20 to 30 minutes to make sure the team was still working.  Carter Depo. at

16   61:13-21, 63:22-25.  Carter testified that Vepa would say things like "[i]f you're not working, you're

17   not making me money," and that if he asked to take a break, Vepa said no.  Carter Depo. at 62:5-9,

18   99:20-100:5.  Carter claimed that he stopped taking breaks because he did not want to lose his job.

19   Carter Depo. at 62:16-24, 65:15-16.  He stated that he only took breaks if the customer said he

20   should.  Carter Depo. at 62:10-15.  In opposition, Defendants assert that the employee manual

21   explicitly allows for two 15-minute rest breaks.  *See* First Vepa Decl., Ex. B.  Vepa testifies that

22   "[t]here can be a lot of down time during the day for drivers and navigators to take their meal and

23   rest breaks but employees have to be flexible in carrying out their duties."  Second Vepa Decl. ¶ 4.

24   Defendants also submitted a declaration from Chris Beltre, a Junk King driver who was paired with

25   Carter on numerous routes.  [Docket No. 46-2, Declaration of Chris Beltre ("Beltre Decl.") ¶ 2.]

26

27   _____

28   [5] As noted above, it is unclear whether Defendants intended these arguments to apply to Carter's
     meal break claim as well.  If they did, their motion is denied as to that claim for the same reasons
     stated below.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Beltre states that he never witnessed "incessant phone calls" from Vepa to Carter, and that he himself

2    never experienced such calls.  *Id.* ¶ 7.  According to Beltre, he spoke to Vepa about 2-3 times per

3    day, not every 20-30 minutes.  *Id.*  Beltre testifies that drivers and navigators have "many

4    opportunities throughout the day to take a meal break or rest break" and that he is unaware of any

5    other employees who claim those breaks are prohibited.  *Id.* ¶ 6.  He states that he has "never felt

6    pressured to forego my lunch break or rest breaks."  *Id.*

7         Courts have generally found that meal and rest break claims do not survive summary

8    judgment if the plaintiff merely alleges a subjective belief that he or she cannot take breaks.  *See,

9    e.g.*, *Frausto v. Bank of Am., Nat'l Ass'n*, No. 18-cv-01983-LB, 2019 WL 5626640, at *8 (N.D. Cal.

10   Oct. 31, 2019) ("[A]n employee's subjective belief that his employer wanted him to skip breaks

11   does not satisfy the legal standard."); *Cleveland*, 200 F. Supp. 3d at 946 ("[C]ourts have not hesitated

12   to grant summary judgment where plaintiffs have skipped breaks of their own accord due to pressure

13   they feel to complete their job in a given amount of time, absent evidence that their employer took

14   action to prevent or impede employees from taking their meal or rest breaks."); *Roberts v. Trimac

15   Transportation Servs. (W.), Inc.*, Case No. 12-cv-05302 HRL, 2013 WL 4647223, at *4 (N.D. Cal.

16   Aug. 28, 2013) (granting summary judgment on plaintiff employee's meal break claims where the

17   plaintiff only had a "subjective belief[]" that he could not take breaks due to the "time pressures of

18   the job").  By contrast, an employer may be liable for "pressuring employees to perform their duties

19   in ways that omit breaks."  *Brinker*, 53 Cal. 4th at 1040.  Courts have denied summary judgment

20   where there was some evidence that an employer actively interfered with an employee's ability to

21   take breaks.  For example, in *Frausto*, the court found a genuine issue of material fact where the

22   plaintiff presented evidence that her employer told her to not take breaks.  2019 WL 5626640 at *8.

23   In *Aguirre v. Genesis Logistics*, 2016 WL 6818351 (C.D. Cal. June 7, 2016), the court denied

24   summary judgment on a rest break claim in the truck driving industry.  There, the plaintiffs presented

25   evidence that they were "regularly pressured" to forego breaks because their employer

26   "maintain[ed] strict driving schedules which require[d] timely deliveries" and pressured its

27   employees to complete the schedules on time.  *Id.* at *3.

28        In this case, Carter does not rely solely on his subjective belief that he was not permitted to

take rest breaks. He specifically asserts that Vepa refused to let him take breaks when he asked for them. Carter Depo. at 99:20-100:5. He also testified that Vepa continuously pressured him to stay on task and move from job to job as quickly as possible. Carter Depo. at 62:5-9, 99:20-100:5. While Defendants claim that the employees have a "lot of down time during the day" during which they can take rest breaks, Second Vepa Decl. ¶ 4, the court cannot weigh conflicting evidence at summary judgment. *Anderson*, 477 U.S. at 249. Beltre's declaration, which directly contradicts Carter's testimony, only serves as further evidence that there is a genuine dispute of material fact as to whether Carter was prohibited from taking rest breaks.[6]

Accordingly, the court finds that there is a genuine dispute of material fact as to whether Defendants prevented Carter from taking rest breaks in violation of California law. Defendants' motion for summary judgment on Carter's rest break claim is denied.

### B.   Failure to Pay Overtime

"Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510; *see also* IWC Wage Order 9-2001, section 3(A). Carter's overtime claim raises two separate issues: (1) whether Defendants failed to pay Carter for the time he allegedly worked after he clocked out for the evening, and (2) whether Defendants improperly paid Carter his usual hourly rate for on-duty meal breaks rather than the time-and-a-half overtime wage. Defendants move for summary judgment on the first issue, while Carter cross-moves for summary judgment on the second.

#### 1.   Defendants' Motion

Carter testifies that he frequently worked more than eight hours a day. Carter Depo. at 95:1-2, 96:18-22. However, he was told to clock out so that his time records would not reflect his

---

[6] Defendants' contention that Carter's testimony is "self-serving" does not help their case. "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

United States District Court
Northern District of California

overtime even though he was required to keep working.  Carter Depo. at 95:1-6, 106:20-107:5, 147:15-20, 147:22-148:8.  Although not completely clear, Defendants' motion for summary judgment on Carter's overtime claim appears to be based on the same argument as his rest break claim: namely, that Carter did not provide sufficient evidence that he was not paid for time he worked after he clocked out.

Defendants' arguments fail for the same reasons addressed with respect to Carter's rest break claim.  Carter has presented admissible evidence through his testimony that he worked in excess of eight hours per day on some occasions and was not paid for those hours.  This evidence is sufficient to raise a genuine dispute of material fact suitable for resolution at trial.

### 2.    Carter's Motion

Work in excess of eight hours per day must be "compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  Cal. Labor Code § 510(a).  Carter moves for summary judgment on his overtime claim insofar as that claim is based on his on-duty meal breaks.  Carter was typically scheduled to work for nine hours a day.  *See* Vepa Depo. at 56:21-58:6; First Vepa Decl., Ex. D. The parties do not dispute that Defendants paid Carter his standard hourly rate for his first nine hours of work.  *See* Vepa Depo. at 56:21-58:6; *see also* First Vepa Decl., Ex. D (Carter's time records show that he was only paid overtime once he worked more than nine hours).  Carter argues that he should have been compensated for the ninth hour of work at an overtime rate, pursuant to Labor Code § 510(a).  Defendants appear to argue that Carter's on-duty lunch hour does not count toward "hours worked" for the purposes of overtime calculations, and so the overtime rate would not start until after Carter worked nine hours (the standard eight hours plus the one hour on-duty meal period). In support of their contention, Defendants cite Labor Code section 226.7, which provides: "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  Cal. Labor Code § 226.7; *see also* IWC Order 9-2001, section 11(D).

Defendants' argument appears to be that a missed meal break is compensated at the

United States District Court
Northern District of California

1    employee's regular rate of compensation even if the missed meal break means that an employee

2    works a total of nine hours in one day (eight hours plus one hour paid meal period).  Defendants'

3    argument is untenable.  Labor Code section 510(a) makes clear that "*[a]ny* work in excess of eight

4    hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the

5    regular rate of pay for an employee."  Lab. Code § 510(a) (emphasis added); *see also* IWC Order 9-

6    2001, section 3(A)(1)(a) (stating that an employer must pay "[o]ne and one-half (1 ½) times the

7    employee's regular rate of pay for *all hours worked* in excess of eight (8) hours . . . ." (emphasis

8    added)).  Defendants point to no authorities that allow employers to schedule employees for nine

9    hours of work, with no meal break and no overtime rate, at the mere cost of an extra hour of the

10   employees' normal rate.

11          The existence of a valid on-duty meal period does not alter this analysis.  If Defendants' on-

12   duty meal period is valid, then Carter cannot recover a premium wage under section 226.7 for his

13   on-duty meal breaks.  *See Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444, 459 (2019), *as*

14   *modified on denial of reh'g* (Oct. 10, 2019) ("[E]mployees who sign on-duty meal agreements that

15   include a right-to-revoke clause are entitled to be paid their regular wages for every on-duty meal

16   period, but they are not entitled to one-hour of premium pay.").  However, nothing in section 226.7

17   restricts the pay rate that applies after eight hours of work.  The applicable Wage Order specifically

18   provides that an on-duty meal period is "counted as time worked."  IWC 9-2001, section 11(C).  In

19   turn, the overtime provision requires that an employer pay "[o]ne and one-half (1 ½) times the

20   employee's regular rate of pay for *all hours worked* in excess of eight (8) hours . . . ."  IWC Order

21   9-2001, section 3(A)(1)(a) (emphasis added).  Therefore, even if a finder of fact determines that

22   Defendants have a valid on-duty meal period agreement, such an agreement only restricts the ability

23   of employees to recover a meal period premium under section 226.7; it does not alter the hours

24   worked for the purposes of overtime calculations.

25          Defendants also cite to a paragraph on the DLSE's website that reads:

26                 If an employer fails to provide an employee a meal period in accordance
                   with an applicable IWC Order, the employer must pay one additional hour
27                 of pay at the employee's regular rate of pay for each workday that the meal
                   period is not provided. IWC Orders and Labor Code Section 226.7. **This**

28

14

**additional hour is not counted as hours worked for purposes of overtime calculations.**

*See* Dep't of Indus. Relations, *Meal Periods*, https://www.dir.ca.gov/dlse/FAQ_MealPeriods.htm (rev. 7/11/2012) (emphasis added).  Defendants seem to construe the bolded language to mean that an employer may freely deny meal breaks for the price of a ninth hour of work at an employee's standard pay rate.  However, the plain meaning of the bolded language is that the additional hour of pay provided by section 226.7 is not an additional hour worked for overtime purposes.  For example, an employee who works eight hours without a meal break would be entitled to an additional hour of pay under section 226.7, for a total of nine hours of pay.  The nine hours of pay, however, does not translate into nine hours of work such that the employee is owed for one hour of overtime.

To summarize, it is undisputed that Carter was paid his standard wage for the first nine hours he worked.  For the reasons stated above, Carter is entitled to overtime pay for any hours he worked in excess of eight hours per day, including his paid meal breaks.  Thus, Carter's motion for summary judgment on his overtime claim is granted.  Because the parties did not explain how many days Carter was not properly compensated for his on-duty meal breaks, the court will not decide at this time what damages Carter should receive on this claim.

**C.         PAGA Claims**

The Private Attorney General's Act ("PAGA"), Cal. Labor Code § 2699 *et seq.*, permits employees to recover civil penalties for violations of enumerated Labor Code provisions.  Carter moves for summary judgment on his PAGA claims, which are premised on violations of Labor Code sections 201 (failure to timely pay final wages upon discharge), 204 (failure to timely pay semimonthly wages), and 226(a) (failure to provide accurate wage statements).  Although Carter is not explicit on this point, his argument appears to be that Defendants unlawfully failed to pay him an overtime rate for his on-duty meal breaks and therefore the payment of those wages is untimely and improperly omitted from his wage statements.[7]

---

[7] The court does not construe these arguments to apply to the hours Carter allegedly worked after clocking out, since he appears to concede that there is a genuine dispute of material fact as to whether he actually did work after hours.

United States District Court
Northern District of California

### 1.      Failure to Pay Wages Upon Termination

Labor Code section 201 provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a).  Willful violations of section 201 subject an employer to waiting time penalties under section 203.  Unpaid overtime wages can serve as the basis for a violation of section 201.  *See Frausto*, 2018 WL 3659251, at *6-7.

The parties agree that Carter was not paid at an overtime rate when his on-duty meal periods resulted in a workday of more than eight hours.  The court granted summary judgment on that issue above, explaining that Carter was entitled to overtime for *any* time he worked in excess of eight hours, including for his on-duty meal breaks.  It follows that Defendants' failure to pay him owed overtime wages upon termination is a violation of section 201.

The court accordingly grants summary judgment on Carter's section 201 claim.  However, Carter did not brief his entitlement to waiting time penalties under the willfulness standard of section 203 or present evidence as to the total amount of overtime he accrued due to his on-duty meal periods.  Therefore, the court does not reach the amount of damages or penalties owed as a result of Defendants' violation of section 201.

### 2.      Failure to Timely Pay Wages

Except under certain circumstances not at issue here, Labor Code section 204 requires employers to timely pay wages twice per month. Cal. Labor Code § 204(a).  Carter appears to argue that as a result of Defendants' failure to pay him overtime, he was not timely paid all wages he was owed on a semimonthly basis.  This argument fails.  Section 204 "simply regulates the timing of wage payments and does not provide for the payment of any particular type of wages or create any substantive right to wages." *Frausto*, 2018 WL 3659251, at *10.  In other words, a violation of section 204 cannot be premised solely on the claim that an employer underpaid wages. *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011), *aff'd*, 546 F. App'x 613 (9th Cir. 2013) ("Section 204 requires the payment of wages in a timely manner; it does not provide a right to wages."); *Fuentes v. Maxim Healthcare Servs., Inc.*, 2018 WL 6137619, at *6 (C.D. Cal. Aug. 9, 2018) ("Section 204 does not address whether an employer paid the correct amount of

wages."); *De La Torre v. Am. Red Cross*, 2013 WL 5573101, at *5 (C.D. Cal. Oct. 9, 2013) ("Labor Code Section 204(a) deals solely with the timing of wages and not with whether the correct wages were paid."). Carter argues only that Defendants underpaid his wages; he does not claim that he was not paid regular and timely paychecks. Underpayment of wages is insufficient to establish a violation of section 204.

Therefore, Carter's motion for summary judgment on his claim under section 204 is denied.

### 3.   Failure to Provide Accurate Wage Statements

Labor Code section 226(a) requires employers to furnish accurate wage statements that include, among other things, the gross and net wages earned and all applicable hourly rates in effect during the pay period. Cal. Labor Code § 226(a). Both statutory and civil penalties are available for a violation of section 226(a). An employee may obtain judgment on civil penalties under PAGA merely by showing a violation of section 226(a), while an employee seeking statutory damages must show that they "suffer[ed] injury as a result of a knowing and intentional" violation. Cal. Labor Code § 226(e)(1); *see Mays v. Wal-Mart Stores, Inc.*, 2018 WL 6264992, at *7 (C.D. Cal. Nov. 1, 2018); *Magadia v. Wal-Mart Assocs., Inc.*, 319 F. Supp. 3d 1180, 1187 (N.D. Cal. 2018).

Carter argues that his wage statements do not accurately reflect his wages or hourly rates because they do not reflect the overtime wages and rate he was entitled to receive for his on-duty meal periods. Defendants argue only that they were not required to pay Carter an overtime rate for those hours; there is no dispute that Carter's wage statements did not reflect the overtime he accrued as a result of his on-duty meal periods.[8] Failure to pay earned overtime supports a derivative claim for inaccurate wage statements because the rates and amounts owed are not reflected in the statements. *See Daugherty v. SolarCity Corp.*, Case No. 16-cv-05155 WHA, 2017 WL 386253, at *8 (N.D. Cal. Jan. 26, 2017) ("[The plaintiff's] overtime claim sufficiently establishes that [the defendant] failed to provide accurate and complete information about [the plaintiff's] wages, in violation of Section 226 . . . ."); *Contreras v. Performance Food Grp., Inc.*, Case No. 14-cv-3380 PJH, 2014 WL 6481365, at *4 (N.D. Cal. Nov. 18, 2014) (finding that wage statements must

---

[8] The timecards submitted by Defendants explicitly show that Carter was not paid overtime for his ninth hour of work. *See* First Vepa Decl., Ex. D.

United States District Court
Northern District of California

United States District Court
Northern District of California

accurately reflect all wages *earned*, not merely report the wages that employees are actually paid).

Here, Carter is entitled to overtime for each hour he worked in excess of eight hours.  It is undisputed that his wage statements did not reflect an overtime rate for his on-duty meal periods when he worked in excess of eight hours.  Accordingly, Carter is entitled to summary judgment on Defendants' failure to provide accurate wage statements as required by section 226(a).  Carter did not brief his entitlement to statutory damages or calculate the civil penalties owed due to the violations, and so the court does not reach the question of damages at this time.

**D.     UCL**

Defendants argue that they are entitled to summary judgment on Carter's UCL claim because it is premised on his wage and hour claims.  Since his wage and hour claims fail, they contend, his UCL claim fails as well.  The court disagrees.  For the reasons stated above, Defendants' motion for summary judgment on Carter's wage and hour claims is denied and therefore those claims may serve as the basis for a UCL claim.  Defendants offer no other reason to rule on Carter's UCL claim at this time.

Accordingly, the court denies summary judgment on Carter's UCL claim.

**E.     Retaliation and Wrongful Termination**

Carter alleges that he was retaliated against and wrongfully terminated for engaging in protected activity by complaining about his workplace conditions.  Defendants move for summary judgment on these claims on the basis that Carter has failed to present evidence that Defendants retaliated against him or terminated him based on protected activity.

According to Carter, he made multiple complaints about his workplace conditions.  He first approached Vepa with his concerns about missed meal breaks around January 2017.  Carter Depo. at 57:12-58:1-13.  Vepa reportedly responded, "Why are you asking me this?"  Carter Depo. at 58:13-15.  Carter testified that, after that conversation, he began getting less desirable routes.  Carter Depo. at 58:22-59:5.  Carter stated that he also made complaints regarding Junk King's practice of hiring day laborers.  Carter Depo. at 112:7-113:12.  Finally, Carter complained about various safety conditions on the job, such as being exposed to needles, mold, and other health hazards, and not being provided with safety equipment.  Carter Depo. at 114:8-117:10, 117:15-118:17.

United States District Court
Northern District of California

1    Defendants argue that Carter's testimony is insufficient to establish retaliation or wrongful

2    termination. They point out that Carter received two pay raises (in March and May 2017) during

3    his time at Junk King. Def. Mot. at 21. They also assert that Carter "worked the same routes that

4    other employees of Junk King worked." *Id.* Beltre testifies that when he drove with Carter, he "did

5    not see any material difference in the routes we were assigned versus the other routes." *Id.* ¶ 7.

6    As with several of Defendants' other arguments, this issue raises genuine disputes of

7    material fact, including whether Carter ever complained about the listed issues; whether he was

8    assigned less desirable routes because of his complaints; and whether he was terminated because of

9    his complaints. These factual disputes are not appropriate for resolution at summary judgment, and

10   so Defendants' motion must be denied as to Carter's retaliation and wrongful termination claims.

11       **F.    Corporate Officer Liability**

12   Defendants move for summary judgment on Carter's wage and hour claims against Vepa,

13   arguing that individual corporate agents are not liable for California wage and hour violations. Def.

14   Mot. at 24 (citing *Martinez v. Combs*, 49 Cal. 4th 35 (2010) and *Reynolds v. Bement*, 36 Cal. 4th

15   1075 (2005)). Defendants' argument is not convincing. While it is true that *Reynolds* held (and

16   *Martinez* affirmed) that "the IWC's definition of 'employer' does not impose liability on individual

17   corporate agents acting within the scope of their agency," *Martinez*, 49 Cal. 4th at 66, Defendants

18   do not explain how that maxim applies in this case. In particular, they fail to support their conclusory

19   assertion that Vepa is merely an agent rather than an employer. To employ means "(a) to exercise

20   control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to

21   engage, thereby creating a common law employment relationship." *Martinez*, 49 Cal. 4th at 64

22   (emphasis in original). Neither party explains whether any of these definitions apply to Vepa. *See,*

23   *e.g.*, *Maravilla v. Rosas Bros. Constr., Inc.*, 401 F. Supp. 3d 886, 903 (N.D. Cal. 2019) (holding that

24   the individual owners and operators of a construction firm were liable for violations of the Labor

25   Code). Further, Defendants do not address the impact of Labor Code § 558.1 on their argument,

26   which "extends liability to an owner, director, officer, or managing agent of the employer who

27   violates, or causes to be violated," certain sections of the Labor Code, including some at issue in

28   this case. *See Rios v. Linn Star Transfer, Inc.*, Case No. 19-cv-07009-JSC, 2020 WL 1677338, at

United States District Court
Northern District of California

1    *5 (N.D. Cal. Apr. 6, 2020) (quoting Cal. Lab. Code § 558.1(a), (b)) (internal quotation marks

2    omitted).

3          For the above reasons, Defendants' motion is denied as to the wage and hour claims against

4    Vepa.

5          **G.    FLSA**

6          Defendants move for summary judgment on Carter's FLSA claim for failure to pay overtime.

7    Under FLSA, an employer must pay overtime to "any of his employees who in any workweek is

8    engaged in commerce or in the production of goods for commerce, or is employed in an enterprise

9    engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). FLSA

10   defines "commerce" as "trade, commerce, transportation, transmission, or communication among

11   the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

12   Defendants argue that FLSA does not apply in this case because Carter was not engaged in interstate

13   commerce within the meaning of FLSA, nor is Junk King an enterprise that is engaged in commerce.

14   Carter asserts that his job involved handling products that came from outside California and that

15   therefore his overtime claims are covered by FLSA. Defendants do not dispute that Junk King's

16   workers sometimes move products from other states or foreign countries.

17         In order to prevail on a FLSA overtime claim, an employee must establish that the employer

18   is liable under either an "enterprise coverage" or "individual coverage" theory. *Yan v. Gen. Pot,*

19   *Inc.*, 78 F. Supp. 3d 997, 1002 (N.D. Cal. 2015). "Individual coverage" under FLSA applies when

20   an employee is "(1) engaged in commerce or (2) engaged in the production of goods for commerce."

21   *Id.* at 1003 (citing 29 U.S.C. § 207(a)). "Enterprise coverage" applies when an enterprise (a) "has

22   employees engaged in commerce or in the production of goods for commerce, or that has employees

23   handling, selling, or otherwise working on goods or materials that have been moved in or produced

24   for commerce by any person" and (b) has an "annual gross volume of sales made or business done"

25   of $500,000 or more. 29 U.S.C. § 203(s)(1)(A); *see Yan*, 78 F. Supp. 3d at 1003. Defendants do

26   not dispute that Junk King's gross volume of sales meets the statutory requirement; therefore, only

27   the first requirement for enterprise coverage is at issue here.

28

1

### 1.     Individual Coverage

The definition for individual coverage requires that the employee is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).  Individual coverage under FLSA is "not so broad as to include working on goods or materials that have been moved in commerce by any person." *Id.*  In *Yan*, the plaintiff employee was a cook who prepared food for customers in a local restaurant. 78 F. Supp. 3d at 1003.  The court noted that the plaintiff may have handled food that was moved interstate before arriving at the restaurant. *Id.*  However, the record reflected that the restaurant prepared food for the purpose of serving it in the restaurant and that the food did not later return to interstate commerce. *Id.*  The court held that individual coverage did not apply because merely using goods that have been moved in commerce is not sufficient to find individual coverage. *Id.*

In this case, it is undisputed that Junk King operates exclusively in the Bay Area and that its trucks and drivers never cross state lines.  Carter did not perform any out-of-state services.  He picked up products from California customers and disposed of them in California dumps or recycling facilities.  The only connection Carter alleges between his work and interstate commerce is that he occasionally hauled items, such as IKEA furniture, that originated outside of California. Carter Depo. at 90:24-91:13.  As in *Yan*, where the court found a cook did not engage in commerce merely by using food that had been moved interstate, Carter does not engage in commerce by hauling some products that may have, at some point, crossed state lines. *See* 78 F. Supp. 3d at 1003.

Accordingly, the individual coverage theory does not apply in this case.

### 2.     Enterprise Coverage

Under an enterprise theory, an employee does not have to show that he or other employees personally engaged in commerce or in the production of goods for commerce; he can also establish FLSA liability by showing that the enterprise's employees "handl[e], sell[], or otherwise work[] on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A).  Defendants assert that Junk King is not an enterprise covered by FLSA because it exclusively services the Bay Area; its workers remove trash from local homes and businesses and deposit it in local dumps and recycling centers for final destruction; and none of its trucks ever cross

state lines.  Def. Mot. at 17; Def. Reply at 3-4.  Carter argues that FLSA applies because he occasionally hauled items that originated from outside of California.  Pltf. Opp. at 13.

Neither party provides relevant authority on enterprise coverage under FLSA.  Defendants rely primarily on *McLeod v. Threlkeld*, 319 U.S. 491 (1943) and *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451 (4th Cir. 1963), but those cases analyzed the original version of FLSA, which did not include a basis for enterprise coverage.[9]  The more recent cases Defendants cite address individual rather than enterprise coverage and are therefore also inapposite.  *See Yan*, 78 F. Supp. 3d at 1003 (finding that the enterprise coverage theory did not apply because the defendant business's gross sale volume did not meet FLSA's monetary standard); *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 524 (D. Md. 2006) (same).  Carter's authority is also unpersuasive.  He relies on cases analyzing employees who work in "any . . . occupation directly essential to the production" of interstate goods under 29 U.S.C. § 203(j).  Those cases focus on, for example, workers that provide waste removal services for businesses that produce interstate goods.  *See Brennan v. Carrasco*, 540 F.2d 454 (9th Cir. 1976); *see also Mitchell v. Dooley Bros., Inc.*, 286 F.2d 40 (1st Cir. 1960); *Nunn's Battery & Elec. Co. v. Wirtz*, 335 F.2d 599 (5th Cir. 1964).  By contrast, Carter's FLSA claim is not premised on whether Junk King provided services that were essential for another business's production of interstate goods, and so the reasoning of those cases does not apply here.

The parties failed to present relevant arguments and authority and the court has no obligation to decipher what those arguments and authorities might be.  It therefore declines to render judgment on Carter's FLSA claim at this time.  Defendants' motion is denied as to this claim without prejudice to raising the issue again in pre-trial proceedings.

## H.     Telephone Purchase Agreement

Carter alleges that Junk King made unlawful deductions from his wages by requiring him to purchase a cell phone and pay for cell phone usage through the employer purchase plan and failed

---

[9] Enterprise coverage was added by an amendment to FLSA in 1961.  *See Donovan v. Scoles*, 652 F.2d 16, 18-20 (9th Cir. 1981).  *McLeod* was decided before 1961 and so did not analyze enterprise coverage at all.  While *Wirtz* was decided in 1963, it did not apply the 1961 amendment because the alleged violations at issue in that case arose before that amendment came into effect.  323 F.2d at 456 n. 7.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    to reimburse him for those business expenses.  Defendants move for summary judgment on the

2    unlawful deductions and failure to reimburse claims.  They point out that the Telephone Policy

3    explicitly states that it is voluntary, and that Carter signed a copy of the agreement.  In response,

4    Carter testified that he was required to purchase a cell phone through the Junk King plan as a

5    condition of his employment.  He also argues that routine business expenses cannot be deducted

6    from employee wages even if the employee consents to the deductions.

7            Under California law, employers must indemnify their employees "for all necessary

8    expenditures or losses incurred by the employee in direct consequence of the discharge of his or her

9    duties . . . ." Cal. Labor Code § 2802(a).  To recover under section 2802, an employee must show

10   that "(i) [he] made expenditures or incurred losses; (ii) the expenditures or losses were incurred in

11   direct consequence of the employee's discharge of his or her duties, or obedience to the directions

12   of the employer; and (iii) the expenditures or losses were reasonable and necessary." *Marr v. Bank*

13   *of Am.*, Case No. 09-cv-05978-WHA, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011), *aff'd sub*

14   *nom. Marr v. Bank of Am., NA*, 506 F. App'x 661 (9th Cir. 2013).  An employee cannot voluntarily

15   waive his right to indemnification for business expenses, since "[a]n employer may not require its

16   employees to consent to unlawful deductions from their wages." *Aguilar v. Zep Inc.*, 2014 WL

17   4245988, at *15 (N.D. Cal. Aug. 27, 2014) (quoting *Hudgins v. Neiman Marcus Grp., Inc.*, 34 Cal.

18   App. 4th 1109, 1111-12 (1995)) (internal quotation marks omitted).

19           Defendants summarily assert, without authority, that the purchase of a cell phone and cell

20   phone usage does not qualify as a routine business expense.  Def. Reply at 6.  Their argument

21   appears to hinge on their claim that purchasing a phone through Junk King's employer plan was

22   voluntary.  *Id.*  They do not respond to the caselaw cited above, which makes clear that employees

23   cannot waive their right to expense reimbursements.  *See Aguilar*, 2014 WL 4245988, at *16 ("Any

24   contract to waive [expense reimbursements] is null and void." (citing *Edwards v. Arthur Andersen*

25   *LLP*, 44 Cal. 4th 937, 951 (2008)).  Further, even if Carter's consent to the Telephone Policy were

26   relevant, it is a disputed fact whether the policy was actually voluntary or whether employees were

27   required to sign it as a condition of employment.  Defendants' argument that Carter was reimbursed

28   for the phone is also a dead end.  Vepa testified that he reimbursed Carter when Carter was

1   terminated, while Carter asserted that he never received payment for the phone.  First Vepa Decl. ¶

2   13; Carter Depo. at 122:19-123:1.  The contradicting facts put forward by the parties cannot be

3   resolved at this stage of litigation.

4        In sum, Defendants have not shown that they are entitled to summary judgment on Carter's

5   claims for unlawful deductions and failure to reimburse.

6        **I.      Punitive Damages**

7        Defendants argue that Carter's prayer for punitive damages must be struck, insofar as the

8   damages relate to his wage and hour and UCL claims.  Def. Mot. at 25.  California district courts

9   have held that punitive damages are not available for violations of the California Labor Code.

10  *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 964 (N.D. Cal. 2016) (citing *Brewer v.*

11  *Premier Golf Props.*, 168 Cal. App. 4th 1243, 1252 (2008)); *Cones v. Parexel Int'l Corp.*, 2017 WL

12  2908789, at *1 (S.D. Cal. July 7, 2017) ("[I]n the context of statutory wage and hour claims under

13  the FLSA and the California Labor Code, punitive damages are not available."); *Jones v. AB*

14  *Acquisition LLC*, 2016 WL 7638188, at *5 (C.D. Cal. Apr. 4, 2016) ("[S]tatutory remedies are

15  generally the exclusive remedy for wage violations."), *aff'd*, 703 F. App'x 563 (9th Cir. 2017);

16  *Dittmar v. Costco Wholesale Corp.*, 2015 WL 7106636, at *5 (S.D. Cal. Nov. 13, 2015) ("[P]unitive

17  damages aren't recoverable for violations of the Labor Code.").  Similarly, it is well-established that

18  punitive damages are not available for a violation of the UCL. *Cleveland*, 200 F. Supp. 3d at 964;

19  *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007) ("[I]t

20  is settled law that punitive damages are not available under section 17200.").

21       Carter does not contest that punitive damages are unavailable for violations of the Labor

22  Code or UCL.  He instead argues that punitive damages are available for wrongful termination

23  claims.  Pltf. Opp. at 25.  Unlike a statutory claim under the Labor Code, wrongful termination in

24  violation of public policy is a tort claim and may include tort relief in the form of punitive damages.

25  *See Freund v. Nycomed Amersham*, 347 F.3d 752, 760 (9th Cir. 2003).  Therefore, while Carter may

26  pursue punitive damages on his wrongful termination claim, Defendants' motion is granted to the

27  extent that Carter seeks punitive damages for his Labor Code and UCL claims.

28

United States District Court
Northern District of California

## IV.    CONCLUSION

For the reasons stated above, the court grants in part Carter's motion on his overtime claim. He is entitled to overtime pay for any hours he worked in excess of eight hours per day, including for on-duty meal periods.  Carter's motion is also granted on his PAGA claims under Labor Code section 201 and 226(a) to the extent that those claims are premised on his overtime claim.  The court does not reach the issue of damages or penalties with respect to those claims.  Defendants' motion is granted to the extent that Carter seeks punitive damages for his Labor Code and UCL claims.  The motions are otherwise denied.

**IT IS SO ORDERED.**

Dated: June 30, 2020

_____
Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California