UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DECATUER CARTER,<br><br>               Plaintiff,<br><br>     v.<br><br>JAI-PUT ENTERPRISE INC., et al.,<br><br>               Defendants. | Case No.  18-cv-06313-DMR<br><br>**ORDER ON MOTION TO ALTER JUDGMENT AND MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 123, 126 |

Plaintiff Decatuer Carter filed this lawsuit against Defendants Jai-Put Enterprise Inc. and Krishna Vepa (collectively, "Defendants") asserting wage-and-hour violations for himself and, for certain claims, on behalf of other aggrieved employees under California's Private Attorneys' General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*  Following a four-day bench trial, the court issued findings of fact and conclusions of law and rendered judgment to Carter in part and Defendants in part.  [Docket Nos. 120 ("FF/CL"), 121.]  Carter now moves to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e) and for attorneys' fees.  The court held a hearing on both motions on August 11, 2022.  For the following reasons, the motion to alter judgment is granted in part and denied in part.  The motion for attorneys' fees is also granted in part and denied in part.

## I.  BACKGROUND

The factual background is thoroughly set forth in the FF/CL.  In brief, Defendant Jai-Put Enterprise, Inc. dba Junk King ("Junk King") is a California corporation and a franchisee of Junk King Franchise Systems.  Junk King is independently owned and operated by Defendant Krishna Vepa and has locations in Livermore and San Leandro.  Junk King provides junk hauling services to businesses, property owners, and residential customers.  Its primary service is to haul away junk

1    and debris.  Junk King also cleans up properties, performs landscaping, and does "soft

2    demolitions," such as taking out kitchen islands and cabinets.   Carter was an employee with Junk

3    King from November 29, 2016 to August 12, 2017.

4         Carter asserted labor violations with respect to Junk King's on-duty meal period policy and

5    telephone purchase program, as well as violations related to meal and rest breaks, overtime, wage

6    statements, payment of final wages, and wage deductions.  Carter also brought claims relating to

7    his termination.  Thus, he originally brought claims for (1) failure to provide meal and rest breaks

8    as required by Labor Code sections 226.7, 512; (2) failure to pay overtime in violation of the

9    FLSA; (3) failure to pay overtime as required by Labor Code section 510; (4) failure to timely pay

10   wages in violation of Labor Code section 204; (5) failure to furnish complete and accurate

11   itemized wage statements as required by Labor Code section 226(a); (6) violations of Labor Code

12   sections 201 and 202 for failing to timely pay wages upon termination; (7) unlawful deductions

13   from his wages in violation of Labor Code section 221; (8) failure to reimburse for business

14   expenses as required by Labor Code section 2802; (9) retaliation in violation of Labor Code

15   section 98.6; (10) retaliation in violation of Labor Code section 6310; (11) wrongful discharge in

16   violation of public policy; and (12) violations of the UCL.  For claims 1, 3, 4, 5, 6, 7, and 8, he

17   also sought civil penalties under PAGA on behalf of himself and 37 current and former Junk King

18   employees for Defendants' violations of the California Labor Code.[1]

19        The court granted summary judgment in favor of Carter on his Labor Code overtime claim.

20   [Docket No. 56 at 15.]  The court also granted summary judgment to Carter on his derivative

21   section 201 and 226(a) claims to the extent that they are premised on his Labor Code overtime

22   claim.  *Id.* at 16, 17-18.  However, the issue of damages on those claims proceeded to trial.  At the

23   pre-trial conference, Carter confirmed that his claim under Labor Code section 204 (and therefore

24   the corresponding PAGA claim) were no longer at issue.  In the pretrial process, the court

25   precluded Carter from seeking PAGA penalties for meal period violations and for failure to

26

27   _____

28   [1] Carter's complaint also sought PAGA relief for his retaliation claim, but he never explained this
     claim nor did he pursue it.

2

United States District Court
Northern District of California

1   reimburse business expenses; Carter also withdraw his PAGA claim for rest break violations.  *See*

2   FF/CL at 11-13, 36.

3          The court found that Carter prevailed at trial on his individual claims for (1) meal break

4   violations; (2) Labor Code "9th Hour" overtime; (3) derivative wage statement violations; (4) final

5   wages, and (5) wage deductions, and granted judgment to Carter on those claims.  The court also

6   found that Carter was entitled to relief under PAGA on behalf of himself and 34 aggrieved

7   employees for (1) 9th hour overtime; (2) derivative wage statement violations; (3) final wages, and

8   (4) wage deductions.  However, the court found that Carter did not prove his claims for (1) rest

9   break violations; (2) FLSA overtime; (3) Labor Code "off-the-clock" overtime; (4) unreimbursed

10  business expenses; (5) retaliation; (6) wrongful termination, and (7) UCL violations—nor was he

11  entitled to statutory damages for his wage statement violations.  Judgment was therefore granted to

12  Defendants on those claims.  The court also found that Carter failed to show he was entitled to

13  PAGA relief for meal break violations.

14         Accordingly, the court awarded Carter individual damages of $5,267.10, calculated as

15  $1,679.75 in meal period premiums + $21.75 in unpaid overtime + $3,480 in waiting time

16  penalties + $85.60 in wage deductions.  The court exercised its discretion to reduce the total

17  PAGA civil penalties to $36,400 because the total unreduced PAGA award was overwhelmingly

18  made up by penalties related to wage statement violations, which the court found to be

19  "predominately technical" and resulted in no injury to any aggrieved employee.  *See* FF/CL at 53;

20  *Huff v. Securitas Sec. Servs. USA, Inc.*, 23 Cal. App. 5th 745, 759 (2018) (quoting Cal. Lab. Code

21  § 2699(e)(2)).

22  **II.     LEGAL STANDARDS**

23         **A.     Rule 59(e) Motion to Alter Judgment**

24         A party may move to alter or amend a judgment no later than 28 days after the entry of

25  judgment.  Fed. R. Civ. P. 59(e).  A motion to reconsider or amend a previous order under Rule

26  59(e) is an "extraordinary remedy, to be used sparingly."  *Kona Enters., Inc. v. Estate of Bishop*,

27  229 F.3d 877, 890 (9th Cir. 2000).  "Under Rule 59(e), a motion for reconsideration should not be

28  granted, absent highly unusual circumstances, unless the district court is presented with newly

1    discovered evidence, committed clear error, or if there is an intervening change in the controlling

2    law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  "[T]he district court

3    enjoys considerable discretion in granting or denying the motion."  *Allstate Ins. Co. v. Herron*,

4    634 F.3d 1101, 1111 (9th Cir. 2011).

5          On a Rule 59(e) motion, "courts will not address new arguments or evidence that the

6    moving party could have raised before the decision issued."  *Banister v. Davis*, 140 S. Ct. 1698,

7    1703 (2020); *accord Kona*, 229 F.3d at 890. ("A Rule 59(e) motion may *not* be used to raise

8    arguments or present evidence for the first time when they could reasonably have been raised

9    earlier in the litigation.").  However "[a] Rule 59(e) amendment may be particularly appropriate

10   where . . . the amendment reflects the purely clerical task of incorporating undisputed facts into

11   the judgment."  *Allstate*, 634 F.3d at 1111.

12         **B.      Motion for Attorneys' Fees**

13         In actions such as this one seeking attorneys' fees for California law claims,[2] California

14   law governs a party's right to attorneys' fees as well as the method of calculation.  *See Klein v.

15   City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016).  "Nevertheless, the Court may still look

16   to federal authority for guidance in awarding attorneys' fees."  *Ridgeway v. Wal-Mart Stores Inc.*,

17   269 F. Supp. 3d 975, 982 (N.D. Cal. 2017).

18         California courts use the lodestar analysis to determine reasonable attorneys' fees.

19   *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).  The lodestar amounts to "the number of hours

20   reasonably expended multiplied by the reasonable hourly rate."  *PLCM Grp. v. Drexler*, 22 Cal.

21   4th 1084, 1095 (2000).  This "lodestar analysis is generally the same under California law and

22   Federal law."  *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *2 (N.D. Cal.

23   Jan. 22, 2020) (quoting *Rodriguez v. Cty. of Los Angeles*, No. 10-cv-6342, 2014 WL 8390755, at

24   *2 (C.D. Cal. Dec. 29, 2014)).  The party seeking fees bears the initial burden of establishing the

25   hours expended litigating the case.  *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807,

26   816 (1992); *see Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  The party

27

28   _____

[2] Carter did not prevail on his sole federal law claim under the FLSA.

United States District Court
Northern District of California

must provide sufficient documentation of the tasks completed and the amount of time spent.  *See Ketchum*, 24 Cal. 4th at 1132; *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).  The requesting party also must show that the "[t]he reasonable hourly rate is that prevailing in the community for similar work."  *PLCM Grp.*, 22 Cal. 4th at 1095; *see also Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006).

"[T]he awarding of attorney fees is a highly fact-specific matter best left to the trial court's discretion."  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 155 (2006).  "The experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong — meaning that it abused its discretion."  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).  The appellate court "defer[s] to the trial court's discretion because of its superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."  *Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th 1228, 1249 (2014).  Unlike the "more stringent federal standard requiring district courts to provide a reasonably specific explanation for all aspects of a fee determination," *Morris v. Hyundai Motor Am.*, 41 Cal. App. 5th 24 n.6 (2016), California law does not require "trial courts to explain their decisions on all motions for attorney fees and costs, or even requiring an express acknowledgment of the lodestar amount," *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 67 (2009).  *Compare Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88, 102 (2015) (requiring "heightened scrutiny" to "percentage cuts to large fee requests" under federal law). Consequently, "[i]n awarding attorney fees in a lesser amount than requested, trial courts are not required to specify each and every claimed item found to be unsupported or unreasonable."  *Gorman*, 178 Cal. App. 4th at 67. Also, "[i]n California, the trial court has no sua sponte duty to make specific factual findings explaining its calculation of the fee award and the appellate courts will infer all findings exist to support the trial court's determination."  *Taylor*, 222 Cal. App. 4th at 1250.

"[T]rial courts must carefully review attorney documentation of hours expended; 'padding'

1

2

3

4

5

6

7

in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum*, 24 Cal. 4th at 1132. "When the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated." *Christian Rsch. Inst.*, 165 Cal. App. 4th at 1323. Likewise, "[w]here . . . the trial court severely curtails the number of compensable hours in a fee award, we presume the court concluded the fee request was padded." *Id.* "[C]ounsel may not submit a plethora of noncompensable, vague, blockbilled attorney time entries and expect particularized, individual deletions as the only consequence." *Id.*

8

### III.    MOTION TO ALTER JUDGMENT

9

10

11

12

Carter moves to alter the judgment on two grounds.  First, he seeks to amend the court's order denying PAGA penalties for waiting time violations under Labor Code section 203 for aggrieved employees.  Second, he seeks an amendment regarding the proper apportionment of PAGA penalties.

13

#### A.    Waiting Time Penalties

14

15

16

17

18

19

20

21

22

23

"When an employment relationship comes to an end, the Labor Code requires employers to promptly pay any unpaid wages to the departing employee." *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 105 (2022); *see* Cal. Lab. Code §§ 201, 202 (specifying statutory deadlines for paying final wages to employees who are discharged or resigned).  "To enforce these deadlines, Labor Code section 203 prescribes a sanction for employers who 'willfully fail[] to pay' the full amounts due: absent timely payment of 'any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.'" *Naranjo*, 13 Cal. 5th at 105-06 (quoting Cal. Lab. Code § 203(a)) (alterations in original).   These penalties are known as "waiting time penalties." *Id.* at 106.

24

25

26

27

28

The court granted summary judgment to Carter on his claim that Defendants failed to pay employees the unpaid overtime as final wages after they were terminated or discharged, leaving the amount of damages or penalties owed to be determined at trial.  [Docket No. 56 at 16.]  After trial, with respect to Carter's individual claim, the court found that he was entitled to waiting time penalties for thirty days pursuant to section 203, calculated as $3,480 ($14.50 per hour x 8 hours

United States District Court
Northern District of California

per day x 30 days).  FF/CL at 48.  The court, however, did not award PAGA penalties for

aggrieved employees' section 203 waiting time penalty violations because Carter did not support

why he was entitled to such an award, and thereby failed to meet his burden:

> As a preliminary matter, the court addresses whether civil penalties are available for a section 203 violation.  Section 203 waiting time penalties are a type of "statutory damages" that employees may collect in their individual capacity and do not constitute a civil penalty.  *Esparza v. KS Indus., L.P.*, 13 Cal. App. 5th 1228, 1242 (2017) (interpreting *Iskanian* [*v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)]).  Carter does not explain his conclusory assertion that PAGA penalties are available for failure to pay waiting time penalties, and the court could not locate any authority to support this proposition.  Absent any argument from either party on this question, the court declines to guess at what those arguments might be and concludes that Carter failed to meet his burden to prove that he is entitled to seek PAGA penalties on behalf of aggrieved employees for failure to pay waiting time penalties under section 203.

> Carter seeks penalties for an astounding 2,204 pay periods.  He reaches this calculation by assessing a penalty of $100 for each pay period where an employee quit or was fired, and then adding a penalty of $100 for each following pay period up to September 18, 2021.  For example, Amare only worked for Defendants during two pay periods and was terminated on December 16, 2017.  Pl. Exs. 21, 22.  Using Carter's calculations of damages, Amare is entitled to $100 per pay period from December 16, 2017 to September 18, 2021, resulting in an award of $9,900 solely for that employee.  Carter has not cited any authority justifying such an award or supporting his calculations, and again, the court has no obligation to speculate about what Carter's argument might be.

> The court finds that 24 employees (1) worked for Defendants during at least one pay period between August 11, 2017 and August 3, 2019; (2) quit or were terminated from their employment; and (3) on at least one occasion worked in excess of 8 hours without receiving overtime pay.  Applying the plain language of section 2699(f), the court finds that Carter is entitled to a civil penalty of $100 per employee who quit or was terminated without receiving their owed overtime.  Therefore, the PAGA penalties for Carter's sections 201 and 202 claim is $2,400.

FF/CL at 48-49.

Carter argues that the court erred in ruling that he could not recover PAGA penalties for

violations of section 203.  However, he fails to demonstrate that the court committed clear error

that warrants the extraordinary remedy of altering the judgment.  Carter's pre- and post-trial

papers only asserted in conclusory fashion that he was seeking final wages and waiting time

penalties for aggrieved employees under PAGA; in one instance, he does not even mention section

7

203.  *See, e.g.*, Docket No. 83 at 22; Docket No. 84 at 11, 21; Docket No. 114 at 431, 443, 445.

He did not offer any legal authority for his request.  Nor did Carter bother to correctly calculate

aggrieved employees' penalties or provide a sum of the total section 203 PAGA penalties; rather,

he grouped them together with PAGA penalties for Labor Code sections 201, 202, 221, 512, and

510 violations to total $558,700.  Docket No. 106 at 3, 6, 11, 402.  Carter's post-trial factual

findings, including his damage calculations, were rife with errors and unexplained assumptions.

*See* FF/CL at 14 ("The parties' submissions regarding the number of overtime hours worked by

aggrieved employees are confusing, rife with errors, and only marginally helpful").  With minimal

help from the parties, the court had to undertake a painstaking process to untangle Carter's records

and figure out the correct damage and penalty calculations.

        In Carter's pre- and post-trial briefs and in his present brief, he once again points without

any explanation to Labor Code section 2699.5 to argue that he is entitled to a PAGA award for

section 203 violations.  Section 2699.5 sets forth the substantive provisions of the Labor Code for

which a plaintiff must satisfy PAGA's pre-filing requirements, provided in section 2699.3, before

initiating a PAGA action.[3]  Carter did not explain the relevance of this section to any of his

---

[3] Section 2699.3 states:

> "A civil action by an aggrieved employee pursuant to subdivision (a)
> or (f) of Section 2699 alleging a violation of any provision listed in
> Section 2699.5 shall commence only after the following requirements
> have been met . . . ."

Cal. Lab. Code § 2699.3(a).  In turn, section 2699.5 states:

> The provisions of subdivision (a) of Section 2699.3 apply to any
> alleged violation of the following provisions: subdivision (k) of
> Section 96, Sections 98.6, 201, 201.3, 201.5, 201.7, 202, 203, 203.1,
> 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208,
> 209, and 212, subdivision (d) of Section 213, Sections 221, 222,
> 222.5, 223, and 224, paragraphs (1) to (5), inclusive, (7), and (9) of
> subdivision (a) of Section 226, Sections 226.7, 227, 227.3, 230, 230.1,
> 230.2, 230.3, 230.4, 230.7, 230.8, and 231, subdivision (c) of Section
> 232, subdivision (c) of Section 232.5, Sections 233, 234, 351, 353,
> and 403, subdivision (b) of Section 404, Sections 432.2, 432.5, 432.7,
> 435, 450, 510, 511, 512, 513, 551, 552, 601, 602, 603, 604, 750,
> 751.8, 800, 850, 851, 851.5, 852, 921, 922, 923, 970, 973, 976, 1021,
> 1021.5, 1025, 1026, 1101, 1102, 1102.5, and 1153, subdivisions (c)
> and (d) of Section 1174, Sections 1194, 1197, 1197.1, 1197.5, and
> 1198, subdivision (b) of Section 1198.3, Sections 1199, 1199.5, 1290,
> 1292, 1293, 1293.1, 1294, 1294.1, 1294.5, 1296, 1297, 1298, 1301,

United States District Court
Northern District of California

substantive Labor Code claims, including for section 203.  In his pre-trial and post-trial papers, he relied on section 2699.5 merely to show that he complied with PAGA's administrative exhaustive requirements.  *See* Docket No. 84 at 22-23; Docket No. 114 at 431, 443, 445.  Carter never connected Labor Code section 2699.5 to his legal theories or offered argument about why section 2699.5 establishes the grounds for his section 203 waiting time penalties—nor does he do so now. Accordingly, the court found that he did not meet his burden of proof on his claim for PAGA penalties for 203 violations.  Carter offers no other legal authority or basis to warrant reconsideration.  Therefore, the court denies Carter's motion to alter the judgment as to section 203 waiting time violations.

### B.   Allocation of PAGA Penalties Recovered

"'An employee plaintiff [bringing a PAGA claim] does so as the proxy or agent of the state's labor law enforcement agencies' and 'with the understanding that labor law enforcement agencies [are] to retain primacy over private enforcement efforts.'"  *Porter v. Nabors Drilling USA, L.P.*, 854 F.3d 1057, 1061 (9th Cir. 2017) (quoting *Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009)) (alterations in original).  "There is no individual component to a PAGA action because every PAGA action is a representative action on behalf of the state." *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 87 (2020); (internal quotations omitted).  The plaintiff sues "on behalf of all affected employees." *Id.  See Saucillo v. Peck*, 25 F.4th 1118, 1128 (9th Cir. 2022) (in enacting PAGA, the "California legislature made a policy choice that the bounty that normally serves as the incentive for the plaintiff to bring the suit should instead be shared with all aggrieved employees.").  "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'"  *Kim*, 9

---

1308, 1308.1, 1308.7, 1309, 1309.5, 1391, 1391.1, 1391.2, 1392, 1683, and 1695, subdivision (a) of Section 1695.5, Sections 1695.55, 1695.6, 1695.7, 1695.8, 1695.9, 1696, 1696.5, 1696.6, 1697.1, 1700.25, 1700.26, 1700.31, 1700.32, 1700.40, and 1700.47, Sections 1735, 1771, 1774, 1776, 1777.5, 1811, 1815, 2651, and 2673, subdivision (a) of Section 2673.1, Sections 2695.2, 2800, 2801, 2802, 2806, and 2810, subdivision (b) of Section 2929, and Sections 3073.6, 6310, 6311, and 6399.7.
Cal. Lab. Code § 2699.5.

United States District Court
Northern District of California

United States District Court
Northern District of California

Cal. 5th at 81; *see* Cal. Lab. Code § 2699(i); *Atempa v. Pedrazzani*, 27 Cal. App. 5th 809, 828-29 (2018) (modifying judgment to "provide that the section 558(a) civil penalties awarded to Atempa and Reyes be distributed 75 percent to the LWDA and 25 percent to the aggrieved employee according to section 2699, subdivision (i)").

The court awarded $36,400 in civil PAGA penalties to Carter and aggrieved employees. In accordance with the plain language of PAGA, 75 percent of that award, or $27,300, must be distributed to the LWDA. Carter now requests that the judgment be amended to clarify the distribution of the penalties. Specifically, "the judgment does not specify the court's intent as to whether the remaining $9,100 awarded is to be distributed to the aggrieved employees in proportion to the amount of penalties included in the order or any other intent." Defendants oppose the request as untimely but recommend that the $9,100 "be proportionately split according to the amount awarded per violation and then further sub-divided on a pro-rata basis based on pay periods worked by each aggrieved employee." Carter does not respond to that proposal.

Carter did not provide a proposed judgment dividing the recovery. [Docket No. 114 at 444.] At the hearing, the court ordered the parties to meet and confer to file a stipulation that: "(1) explains how they will apportion the PAGA penalty award to the LWDA and each aggrieved employee, *see* Cal. Labor Code § 2699(i), and (2) presents a detailed plan on how the parties will distribute the funds, including, without limitation, how they will locate, notify, and pay former aggrieved employees, how they will handle returned mail and uncashed checks, and the schedule for accomplishing these tasks." [Docket No. 138.]

On August 25, 2022, the parties filed a stipulation and proposed judgment agreeing to an apportionment of the PAGA penalty award to the LWDA and each aggrieved employee. [Docket No. 139.] The parties also agreed that Defendants will pay all current employees entitled to a PAGA distribution within thirty days, and that if a former employee cannot be located, the funds will be deposited in the former employee's name with the California State Controller's Office. Because the allocation is not disputed and amendment of the judgment on this basis is a largely clerical task, *see Allstate*, 634 F.3d at 1111, the court amends the judgment in accordance with the instructions at the end of this opinion.

1        The parties also filed a status report stating that they disagree over the process to locate

2   former "aggrieved employees" and the deadline by which to pay them.  [Docket No. 140 at ¶ 1.]

3   The parties also disagree over the timeline for Defendants to remit their LWDA's apportionment

4   to the agency.  [Docket No. 140 at ¶ 2.]

5        The court entered judgment against Defendants on various PAGA claims due to

6   Defendants' violations of the California Labor Code.  The court concludes that Defendants are

7   therefore required to make diligent efforts to locate all aggrieved former employees in order to pay

8   them what they are owed.  This includes the expenditure of additional resources to conduct a

9   fulsome search for those individuals, using third-party search tools such as skip tracing if

10  necessary.  If Defendants cannot locate a particular aggrieved former employee after a reasonable

11  search including skip tracing, the court will grant leave to Defendants to deposit the funds in the

12  former employee's name with the California State Controller's Office so that the individual can

13  later claim the funds, but only after Defendants have demonstrated that they have taken adequate

14  steps to locate the individual.  Defendants are ordered to file detailed status reports about this

15  process per the instructions at the end of this opinion.  As for the timeline for paying the LWDA,

16  given that the agency is the "real party in interest" in a PAGA suit, *see Sakkab v. Luxottica Retail*

17  *N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015), the court orders that the parties meet and confer

18  promptly with LWDA officials to determine a reasonable payment schedule.

19       Lastly, the court notes that the PAGA requires that the copy of the judgment and "any

20  other order in that action that either provides for or denies an award of civil penalties" be

21  submitted to the LWDA within ten days.  Cal. Lab. Code § 2699(*l*)(2).  In light of Plaintiff's

22  counsel's repeated deficiencies in litigating this case, Plaintiff must file proof within ten days that

23  his counsel filed this order and the court's May 24, 2022 order with the LWDA.[4]

24  ## IV.    MOTION FOR ATTORNEYS' FEES

25       Carter moves for an award of $313,350 in attorneys' fees for work performed by his

26  counsel at Burton Employment Law.  [Docket No. 123 ("Mot."), 135 ("Reply").]  Supporting this

27

28  [4] Judgments may be filed on the LWDA's website at https://www.dir.ca.gov/Private-Attorneys-General-Act/Private-Attorneys-General-Act.html.

1    request is a declaration from lead counsel Jocelyn Burton.  Declaration of Jocelyn Burton ("Burton

2    Decl.").  [Docket No. 123-1.]  Burton asserts that this request contemplates a 10 percent reduction

3    from a lodestar of $348,166.17, which is made up of 592.42 hours of work performed by 4

4    timekeepers.  *See* Declaration of Jocelyn Burton ("Burton Decl.") ¶ 12.   Defendants challenge

5    Carter's entitlement to an attorneys' fees award, well as the reasonableness of his counsel's rates

6    and hours expended in this litigation.  [Docket No. 127 ("Opp'n").]

### A.    Carter's Entitlement to Fees

8         Defendants argue that Carter is not entitled to a fee award.  Although not a model of

9    clarity, Defendants' contentions can be grouped as follows: 1) Carter was not a prevailing party; 2)

10   Carter's fees should be apportioned such that he is not awarded fees for time spent on unsuccessful

11   claims, and 3) Carter's fee award is unreasonable because it is disproportionate to the amount of

12   the judgment.

### 1.    Prevailing Party

14        Defendants first argue that Carter is not a "prevailing party" and therefore is not entitled to

15   an attorneys' fee award.  Under California law, the "default rule" for prevailing party in the

16   context of attorneys' fees is set forth in California Civil Code section 1032.  *DeSaulles v. Cmty.*

17   *Hosp. of Monterey Peninsula*, 62 Cal. 4th 1140, 1147 (2016).  A "prevailing party" is defined as

18   "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a

19   defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those

20   plaintiffs who do not recover any relief against that defendant."  Cal. Civ. Proc. Code §

21   1032(a)(4).   "Except as otherwise expressly provided by statute, a prevailing party is entitled as a

22   matter of right to recover costs in any action or proceeding."  Cal. Civ. Code § 1032(b).  However,

23   this definition is "not uniform under California law, and many attorney fees statutes contain a

24   technical definition applicable to the particular statutory scheme."  *Donner Mgmt. Co. v. Schaffer*,

25   142 Cal. App. 4th 1296, 1309 (2006).  Those statutes create an "express" exception to the default

26   under section 1032.  *See Murillo v. Fleetwood Enters., Inc.*, 17 Cal. 4th 985, 991 (1998).

27        The Labor Code provides alternate provisions for recovery of attorneys' fees in wage-and-

28   hour cases.  Labor Code section 218.5 authorizes an attorneys' fees award to a prevailing party in

United States District Court
Northern District of California

United States District Court
Northern District of California

a civil action "brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions." Cal. Lab. Code §§ 218.5(a). "Section 218.5 entitles the prevailing party, in any action for 'wages,' to a mandatory award of costs and attorney's fees." *Earley v. Super. Ct.*, 79 Cal. App. 4th 1420, 1427 (2000). "[T]he purpose of section 218.5 is to ensure that prevailing plaintiffs who bring actions against employers on account of the employer's failure to pay that plaintiff the wages or certain other benefits to which he or she is entitled are awarded their attorney fees." *Shames v. Util. Consumer' Action Network*, 13 Cal. App. 5th 29, 43 (2017). Section 218.5 is "a two-way fee-shifting provision," meaning that it applies to prevailing employees or employers. *Kirby v. Imoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1248 (2012).

Labor Code section 1194 provides for an attorneys' fee award to prevailing employees who recover wages "less than the legal minimum wage or the legal overtime compensation." Cal. Lab. Code § 1194(a). "[S]ection 1194 alone applies to overtime compensation claims." *Earley*, 79 Cal. App. 4th at 1431. It does not apply to claims for nonpayment of wages under section 218.5. *See* Cal. Lab. Code § 218.5(b); *Kirby*, 53 Cal. 4th at 1248. Section 1194 is a "one-way fee-shifting provision," meaning that it applies to prevailing employees only. *Kirby*, 53 Cal. 4th at 1248.[5]

An employee who prevails in a PAGA action to recover civil penalties is also entitled to a reasonable attorneys' fee award. Cal. Lab. Code § 2699(g)(1). Attorneys' fees in a successful PAGA suit are awarded as "a matter of right." *Atempa*, 27 Cal. App. 5th at 829.[6]

Finally, "[i]n the absence of a specific Labor Code provision, costs are awarded in employment dispute matters under Code of Civil Procedure section 1032." *Cruz v. Fusion Buffet, Inc*, 57 Cal. App. 5th 221, 239 (2020), *review denied* (Feb. 10, 2021).

---

[5] Defendants concede that "[a]ttorney's fees in wage and hour cases are covered by two sections of the Labor Code: 218.5 and 1194." Opp'n at 8.

[6] Carter does not invoke his statutory right to seek fees for his PAGA claims in his motion, but he raises it on reply. *See* Reply at 3. Normally, it would be inappropriate to raise a new issue on reply. However, his complaint requested fees under Labor Code section 2699(g) so Defendants have long been on notice of this claim. [Docket No. 1 at 21.] Carter's pretrial statement notes that he seeks fees and costs without addressing the statutory bases. [Docket No. 73 at 6.]

United States District Court
Northern District of California

1    Defendants argue that the court should not apply the definition of "prevailing party" in

2  section 1032 and should instead use its discretion to determine the issue "on a practical level." *Id.*

3  at 1.  "In the absence of legislative direction in the attorney fees statute, the courts have concluded

4  that a rigid definition of prevailing party should not be used.  Rather, prevailing party status

5  should be determined by the trial court based on an evaluation of whether a party prevailed on a

6  practical level." *Donner*, 142 Cal. App. 4th at 1310.  "[T]he trial court in its discretion determines

7  the prevailing party, comparing the relief sought with that obtained, along with the parties'

8  litigation objectives as disclosed by their pleadings, briefs, and other such sources." *On-Line*

9  *Power, Inc. v. Mazur*, 149 Cal. App. 4th 1079, 1087 (2007).

10    Defendants contend that Carter was not a prevailing party as the court awarded him far less

11  than he sought in his pretrial papers on his successful individual claims, he obtained "minimal"

12  success on his PAGA claims, and he lost on other claims.  Opp'n at 1-4.  Defendants' argument is

13  unconvincing.  The Labor Code expressly entitles Carter, as a prevailing employee, to a fee award

14  on his successful claims for nonpayment of wages, overtime, and PAGA.  *See* Lab. Code §§

15  218.5, 1194, 2699(g)(1).[7]

16    Moreover, Carter was the prevailing party on a practical level.  He established liability for

17  certain overtime violations at summary judgment.  At trial, even though Carter did not prevail on a

18  number of claims, he was successful on his individual meal break, 9th hour overtime, wage

19

20  ───────────────

21  [7] To the extent Defendants argue that these Labor Code provisions are not express exceptions to

22  the "prevailing party" provision in Civil Code section 1032 such that the court must employ a
discretionary approach to determine prevailing party status, Defendants do not offer any

23  convincing authority to support that proposition.  Defendants' authorities are readily
distinguishable.  The only case that involved Labor Code claims is *On-Line Power, Inc. v. Mazur*,

24  149 Cal. App. 4th 1079, 1086-87 & n.7 (2007), but there the court of appeal did not decide
whether a salaried, non-hourly executive was a "prevailing party" under section 218.5 as the

25  matter was not briefed.  Defendants' remaining cases do not involve wage-and-hour claims.  *See*
*Zuehlsdorf v. Simi Valley Unified Sch. Dist.*, 148 Cal. App. 4th 249, 256-57 (2007) (fee award

26  under California Government Code 800 related to challenging an administrative adjudication);
*Donner*, 142 Cal. App. 4th at 1309 (fee award under Corporations Code section 800 in a

27  shareholder derivative suit); *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103 (1999) (fee award
under Civil Code section 1717 regarding attorneys' fees stipulated by contract); *Hsu v. Abbara*, 9

28  Cal. 4th 863, 872 (1995) (also involving section 1717).

14

United States District Court
Northern District of California

1   statement, final wages, and wage deduction claims.  He also succeeded on behalf of aggrieved

2   employees for the overtime, wage statement, final wages, and wage deduction PAGA claims.

3   Although his actual recovery was far less than requested, that result was largely due to significant

4   problems in the way his counsel litigated the case.  *See, e.g.*, FF/CL at 14; Tr. Vol. 1 at 23-29

5   (ruling on Defendants' motion in limine No. 1 that Carter was not "substantially justified for

6   failing to supplement his interrogatory responses to set forth the amounts he is seeking for

7   aggrieved employees under PAGA and for providing those amounts for the first time at the brink

8   of trial, nearly two years after he made his interrogatory responses") [Docket No. 110.]  Counsel's

9   problematic litigation efforts are addressed below in the context of the reasonableness of Carter's

10  fee request.

### 2.    Apportionment

12      Defendants also argue that Carter is not entitled to attorneys' fees for his individual meal

13  break claim under Labor Code section 226.7.[8]  "[N]either section 1194 nor section 218.5

14  authorizes an award of attorney's fees to a party that prevails on a section 226.7 claim."  *Kirby*, 53

15  Cal. 4th at 1248, 1254-55.  This is because "the gravamen of a section 226.7 action is the

16  nonprovision of meal or rest periods, not the nonpayment of wages."  *Ramos v. Garcia*, 248 Cal.

17  App. 4th 778, 790 (2016); *see Kirby*, 53 Cal. 4th at 1256-57.

18      Defendants contend that a substantial portion of the trial related to Defendants' meal break

19  policy.  Opp'n at 8-9.  They argue that because attorneys' fees for meal break claims are not

20  compensable, they should be considered separate from Carter's other claims.  Defendants assert

21  that because Carter's timeslips are not divided on a "claim-by-claim" basis, the court cannot

22  conduct any "rational apportionment," and therefore none of the time is compensable.

23      Defendant's argument is untenable with respect to Carter's claims under the California

24  Labor Code.  While it is true that "[w]here a plaintiff has alleged multiple causes of action and is

25  statutorily entitled to fees with respect to only one or fewer than all of the claims, the trial court

26

27  [8] At the pretrial proceedings, the court precluded Carter from seeking PAGA meal period
    violations for aggrieved employees.  FF/CL at 38-39.   The court granted judgment for Defendants
28  on Carter's individual rest break claim.  FF/CL at 41.

can apportion the attorney fees . . . attorney fees need not be apportioned between claims for which statutory fees are available and those for which they are not where the claims involve either common factual issues or legal issues." *Cruz v. Fusion Buffet, Inc*, 57 Cal. App. 5th 221, 235 (2020), *review denied* (Feb. 10, 2021). "[R]ather than follow a formulaic reduction based on the number and percentage of unsuccessful claims, . . . [the court] must examine the nature and 'course of conduct' upon which the claims are based." *Harman v. City & Cty. of S.F.*, 158 Cal. App. 4th 407, 423 (2003). "Apportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units." *Hoffman v. Superior Ready Mix Concrete, L.P.*, 30 Cal. App. 5th 474, 485 (2018).[9] *See also Cruz*, 57 Cal. App. 5th at 235 ("[A]s the one who has heard the entire case, it is the trial court who is in the best position to determine whether any further allocation of attorney fees is required or whether the issues were so intertwined that allocation would be impossible" (internal quotations omitted)).

  *Cruz* is instructive.  It involved claims for meal and rest break, overtime, wage statement, waiting time penalties, and wage deduction violations.  The court of appeal affirmed the trial court's decision not to apportion fees because "[a]lthough no statutory basis for attorneys' fees exists for meal and rest break claims, Plaintiff's litigation on her meal and rest break claims are inextricably intertwined with her other wage and hour claims for which fees are recoverable." *Cruz*, 57 Cal. App. 5th at 228, 235.  "Cruz's claims, including her meal and rest break claims, shared some common factual and legal issues" with her wage claims.  *Id.* at 235-36.  "[A]ll necessarily required an analysis and consideration of the number of hours that Cruz worked" and an "evaluation of evidence such as photographs of timecards, paycheck stubs, a list of gratuities paid and the dates on which they were paid, as well as testimony regarding the hours worked or amounts paid." *Id.* at 236.  The court distinguished *Heppler v. J.M. Peters Co.*, 73 Cal. App. 4th

---

[9] *See also McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (in a lawsuit under 42 U.S.C. § 1983, where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

1265 (1999), in which "there existed well-defined lines of demarcation . . . such that the causes of action litigated in the trial . . . were not all inextricably intertwined"; by contrast, in *Cruz* "no such distinct boundaries exist." *Id.*

Here, although Carter's individual meal break claim resulted in a minor recovery ($1,679.75 in meal break premiums), it was factually intertwined with the other claims.  *See* FF/CL at 39-40.  Carter succeeded on his claim for 9th hour overtime, and his individual and PAGA-related wage statement claims and final wages claims were "derivative" of the overtime claims.  FF/CL at 44, 47-48.  He also succeeded on his wage deduction claim.  FF/CL at 50. Carter did not prevail on his individual rest break, timely wages, and unreimbursed business expenses claims, either because he did not meet his burden at trial or he abandoned them.  FF/CL at 36, 40-41, 51.  All of these unsuccessful claims, however, are intertwined with the successful ones as they involved the same evidence and required the parties and the court to evaluate the same timesheets and payroll records.  *Cruz*, 57 Cal. App. 5th at 236.

On the other hand, Carter's individual FLSA, retaliation, wrongful termination, and UCL claims were not derivative or intertwined with his Labor Code claims.  The court determines that his counsel's time associated with those claims is not compensable.  Because his counsel's time records are not broken down in a claim-by-claim approach the court exercises its discretion to reduce Carter's hours to reflect these separable unsuccessful claims, as discussed below.

### 3.    Proportionality

Finally, Defendants assert that Carter's requested fee award is "patently unreasonable" and disproportionate to the total amount of his recovery.  Opp'n at 5-6.  This argument lacks merit. Fee awards need not be "proportional to the amount of damages recovered."  *Taylor*, 222 Cal. App. 4th at 1251.  In other words, "[t]here is no mathematical rule requiring proportionality between compensatory damages and attorney's fees awards, and courts have awarded attorney's fees where plaintiffs recovered only nominal or minimal damages."  *Harman*, 158 Cal. App. 4th at 421; *see also McCown*, 565 F.3d at 1104 ("A rule of proportionality is inappropriate . . . because it fails to recognize the nature of many, if not most, civil rights cases, in which damages may be limited by law, regardless of the importance of the civil rights at issue.  . . . For this reason, the

United States District Court
Northern District of California

district court must consider the excellence of the overall result, not merely the amount of damages won.").  "Success may be measured by 'the significance of the legal issues on which the plaintiff prevailed and the public purpose the litigation served.'"  *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1007 (2013) (concluding that "the trial court did not abuse its discretion in not reducing the attorney fee award based on an argument that Monroy achieved limited success.").

While Carter did not ultimately prevail at trial on all of his claims, he nonetheless secured a judgment on behalf of himself and other aggrieved employees who were harmed by Defendants' unlawful workplace practices, such the on-the-clock meal period policy and the telephone purchase program.  Carter's lawsuit vindicated important public rights for low-income workers, whose rights California's wage-and-hour statutory regime seeks to protect.  *See Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903, 952 (2018) ("Wage and hour statutes and wage orders were adopted in recognition of the fact that individual workers generally possess less bargaining power than a hiring business and that workers' fundamental need to earn income for their families' survival may lead them to accept work for substandard wages or working conditions.").

Accordingly, the court does not impose an arbitrary "proportionality" reduction to Carter's fee award simply because he did not fully achieve his desired result at trial.

### B.   Reasonableness of Hourly Rates

Courts must consider "the hourly amount to which attorneys of like skill in the area would typically be entitled."  *Ketchum*, 24 Cal. 4th at 1133.  "The rates of comparable attorneys in the forum district are usually used."  *Heritage Pac.*, 215 Cal. App. 4th at 1009.; *see also Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 700 (2014) ("The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located.").  Typically, "affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *Heritage Pac.*, 215 Cal. App. 4th at 1009 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).  *See also* Civ. L.R. 54-5(b)(3) (a fee motion must be accompanied by an affidavit with "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each

such person or of comparable prevailing hourly rates or other indication of value of the services.").

Carter requests a $850 hourly billing rate for lead counsel Jocelyn Burton.  Burton graduated from University of Chicago Law School in 1988 and was admitted to the California bar the same year.  Burton Decl. ¶¶ 6, 3. She served as an associate or counsel at three law firms and as an Assistant United States Attorney for the Northern District of California, including serving as chief of the civil division from 2001 to 2003.  *Id.* ¶ 3. She started Burton Employment Law in 2011 and was as a Lawyer Representative for this district from 2012-2015.  *Id.* ¶ 3.

Carter requests $325 hourly rates for Scott Nakama and Mara Sackman, two former associates who worked at Burton's firm from 2015 to 2020 and 2020 to 2021, respectively. Burton Decl. ¶¶ 7-8.[10]  Nakama is a graduate of Case Western Reserve School of Law and has practiced law since June 2014.  *Id.* ¶ 7.  Sackman is a graduate of University of California, Hastings College of the Law and has practiced law since December 2019.  *Id.* ¶ 8.  Finally, Carter requests a $165 hourly rate for Helen O'Keefe, a paralegal who has worked at Burton's firm since 2015.

Carter supports the requested rates by referring to decisions in this district that have ratified similar hourly rates for private plaintiffs' attorneys with similar years of practice.  Mot. at 4-5.  In one decision, the Honorable Phyllis J. Hamilton awarded Burton a $950 hourly rate. *Robinson v. Open Top Sightseeing San Francisco, LLC*, No. 14-CV-00852-PJH, 2018 WL 2088392, at *3 (N.D. Cal. May 4, 2018); *see also* Burton Decl. Ex. B.  In that case, Burton served primarily as a member of the trial counsel team.  *Id.* at *7-8.  Judge Hamilton had "little doubt" that Burton's and her co-counsel's rates were "significantly inflated" but nevertheless accepted them in the absence of any evidence or argument to the contrary from the defendants.  *Id.* Judge Hamilton reduced Burton's hours—although to a lesser extent than for her co-counsel—

---

[10] Carter declares at one point in his motion that he requests fees at "$325 to $250 for associate attorneys."  Mot. at 5.  He later says that "$325-$850 for attorneys' services are more than reasonable."  *Id.* at 7.  The table in his papers refers only to $325 hourly rates for Nakama and Sackman and nowhere else does he request a $250 hourly rate for either Nakama or Sackman. Mot. at 9; Burton Decl. ¶ 12.  On this confusing record, the court assumes that Carter's requested rate for both attorneys is $325, although as discussed below, the court finds that a lower rate for Sackman is reasonable, given that she has five years less experience than Nakama.

United States District Court
Northern District of California

because of "highly excessive" billing and poor performance at trial. *Id.* at *7 ("Unlike some of the other litigation tasks discussed above, the court has first-hand knowledge regarding how counsel's preparation translated into performance [at trial]. And the answer is not well.").

Carter also proffers *Polee v. Central Contra Costa Transit Authority*, 516 F. Supp. 3d 993 (N.D. Cal. 2021), an employment discrimination case in which the Honorable Susan Illston found that an $850 billing rate was reasonable and "within the prevailing market rates for Bay Area practitioners in the areas of civil rights and employment discrimination and retaliation" for a plaintiff's attorney with 33 years of experience, *id.* at 997-98. He also offers *Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. United RSC Gen. & Eng'g, Inc.*, No. 3:19-cv-02308-WHA, 2020 WL 3402240, at *2-3 (N.D. Cal. June 19, 2020), on an unopposed motion for attorneys' fees in an ERISA trust funds recovery matter, in which the Honorable William Alsup awarded a $230 rate for second-year associate specializing in ERISA litigation and a $135 hourly rate for paralegal.[11]

Defendants only challenge Burton's requested rate of $850. They point to three cases to support a lower rate, but they do not suggest an alternate amount. Opp'n at 10; *see Berry v. Urb. Outfitters Wholesale, Inc.*, No. 13-CV-02628JSW (KAW), 2015 WL 580579, at *4 (N.D. Cal. Feb. 11, 2015) (on fees request related to defense's failure to appear for a deposition, awarding a $400 for an attorney with eight years legal experience after the plaintiff failed to provide any in-district cases or declarations supporting a higher rate); *Postier v. Louisiana-Pac. Corp*, No. 09-CV-03290-JCS, 2014 WL 1760010, at *4-5 (N.D. Cal. Apr. 29, 2014) (in motion to enforce settlement agreement related to products liability, approving a $425 hourly rate for a law firm partner with over twenty years of experience but noting that courts in this district have awarded $700 hourly rates to attorneys with such experience); *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-

---

[11] Carter's remaining case is distinguishable. *See Ogbuehi v. Comcast of Cal./Colo. /Fla./Or., Inc.*, No. 2:13-cv-00672-KJM, 2015 WL 3622999 (E.D. Cal. June 9, 2015). *Ogbuehi* is an out-of-district case in which attorneys' fees were awarded as part of common fund recovery in a wage-and-hour class action settlement, and the court only considered the hourly rates as part of its lodestar crosscheck. The decision did not specify the class counsel's practicing legal market and Carter did not provide the filings, so the court went to the docket and found that class counsel all practiced in Los Angeles. Hourly rates outside of this legal market are irrelevant for this motion.

02576 NC, 2013 WL 1789602, at *10-12 (N.D. Cal. Apr. 26, 2013) (in a wage-and-hour class action, approving a $700 hourly rate for a 1987 law school graduate, a $600 rate for a 1976 graduate, and $300-$400 rates for additional associates).

The court finds that Burton's $850 hourly rate is reasonable and falls within the market rates for attorneys of similar experience, skill, and reputation who handle wage-and-hour cases in the Bay Area. Judge Illston's recent award in *Polee* confirms this hourly rate. Also, the fact that Burton seeks a lower rate than what she sought and was awarded in *Robinson* supports the reasonableness of her $850 request. Apart from being out-of-date, Defendants' cases are not persuasive. The attorney in *Berry*, which was decided seven years ago, had less experience than Burton and did not provide any evidentiary support for his fees motion. *Postier*, decided eight years ago, expressly stated that a $700 hourly rate would be appropriate for a senior attorney in this district. And the $700 hourly rate approved in *Greko*, decided nine years ago, in fact supports Burton's rate when adjusted for cost-of-living increases. Defendants' complaint about how Burton litigated this case, *see* Opp'n at 12, is better suited for resolution in the manner discussed below and should not be expressed as an adjustment to her hourly rate.

As for Nakama's rate, which is unopposed, the court finds that a $325 rate is reasonable for a 2014 law graduate. Sackman's requested $325 rate for a 2019 law graduate is inflated given that the same rate is being applied to an associate with five years' more experience. The court finds that a $300 rate is reasonable for Sackman. The court also finds that a $165 rate for a paralegal is reasonable.

### C.    Reasonableness of Hours Expended

Next, the court "must carefully review attorney documentation of hours expended." *Ketchum*, 24 Cal. 4th at 1132. "The attorneys' submissions form the starting point for the trial court's determination of the 'hours reasonably expended' component of the lodestar analysis." *Alnor*, 165 Cal. App. 4th at 1324 (internal citations omitted); *see also* Civ. L.R. 54-5(b)(2) (requiring "[a] statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained."). "'Reasonably spent' means that time spent 'in

United States District Court
Northern District of California

1

2

the form of inefficient or duplicative efforts is not subject to compensation.'"  *Horsford*, 132 Cal. App. 4th at 394 (quoting *Ketchum*, 24 Cal. 4th at 1132).

3

4

Carter's counsel billed a total of 592.42 hours.  Carter supports those hours with timeslips. Burton Decl. ¶ 11, Ex. A.

5

6

7

8

9

Defendants object broadly to the hours as "riddled with block billing entries" and "generic cryptic task descriptions."  They contend that the fee descriptions are not sufficiently detailed. They also contend that Carter's hours are duplicative and represent inefficient effort.  However, Defendants only point to billing records on two days, August 30, 2021 and August 31, 2021 to illustrate their argument.

10

11

12

13

14

15

16

17

18

19

"Block billing occurs when 'a block of time [is assigned] to multiple tasks rather than itemizing the time spent on each task.'"  *Mountjoy v. Bank of Am., N.A.*, 245 Cal. App. 4th 266, 279 (2016).  "Trial courts retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not."  *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1010 (2013); *see Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 689 (2000) (finding that blocked-billing entries "render it virtually impossible to break down hours on a task-by-task basis between those related to the Brown Act violation and those that are not.  If counsel cannot further define his billing entries so as to meaningfully enlighten the court of those related to the Brown Act violation, then the trial court should exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside.").

20

21

22

23

24

25

Having reviewed counsel's time records, the court notes that many of the entries are vague and generic.  *See, e.g.*, Burton Decl. Ex. A at 29 (timeslips of Jocelyn Burton on January 8, 2020 including "review/analyze written motions and submissions," "Draft/revise e-mail").  As discussed below, this precludes the court from excising time with any precision.  However, nothing in the time slips suggests that Carter's counsel generally billed for multiple or non-compensable tasks.

26

27

28

As to the specific challenged entries for Burton, Sackman, and O'Keefe on August 30 and 31, 2021, they relate to preparation of the proposed findings of fact and conclusions of law. Burton Decl. Ex. A at 11.  As a general matter, it is reasonable that multiple attorneys worked to

prepare these post-trial submissions.

Nevertheless, the court finds that a substantial reduction in the hours is warranted in this case. First, the court reduces time expended on former Plaintiff Joshua Parshey. Plaintiff's counsel had been unable to contact Parshey since filing the complaint in October 2018, and Parshey never appeared to prosecute his claims despite multiple court orders. [Docket No. 32, 34, 37, 38, 43.] Accordingly, the court dismissed Parshey's claims without prejudice for failure to prosecute on February 12, 2020. [Docket No. 43.] Given that those claims were not successful, Carter is not entitled to time spent on Parshey's case.

Second, the court reduces counsel's time spent litigating Carter's unsuccessful FLSA claims at summary judgment and at trial. As the court observed in its order on summary judgment, Carter did not provide relevant legal authority supporting his FLSA theories, and "the court has no obligation to decipher what those arguments and authorities might be." [Docket No. 56 at 22.] The court accordingly declined to render judgment on Carter's FLSA theories and denied Defendant's motion as to that claim without prejudice. *Id.* Indeed, Carter's evidence in his post-trial briefs revealed that he did not work more than 40 hours a week, which is required to establish liability under FLSA; accordingly, the court found that Carter did not meet his burden to establish a FLSA violation. FF/CL at 41. The court nevertheless expended significant effort parsing Carter's legal arguments and submissions throughout this litigation to attempt to figure out Carter's FLSA claim, which was the sole basis for federal jurisdiction. Similarly, the court reduces counsel's time spent on other unsuccessful claims that were segregable from the Labor Code claims—namely, the various theories of liability for Carter's termination.

Most significantly, the court reduces the time due to counsel's repeated failures to adequately prepare and try the case. Generally speaking, Plaintiff's submissions were poorly prepared, confusing, and rife with errors. On multiple occasions, Plaintiff's counsel presented cursory legal arguments without sufficiently developing them or supporting them, apparently expecting the court to research the case law and comb through stacks of evidence. *See, e.g.*, Section III.A, *supra*; FF/CL at 43; Text Order of Aug. 11, 2021 ("[N]one of Plaintiff's pre-trial submissions explain how he intends to prove up his PAGA claims for all aggrieved employees")

23

United States District Court
Northern District of California

[Docket No. 93.]  Also, on the eve of trial, counsel suddenly submitted grossly inflated damages calculations without any explanation of their derivation.  By granting Defendant's motion in limine No. 1, the court drastically narrowed Plaintiff's case because of litigation errors that pointed to counsel's failure to adequately develop the theories of the case through discovery, particularly with respect to the PAGA claims.  Finally, counsel's pre-trial and post-trial briefs, though voluminous, were ill-drafted and bafflingly opaque, requiring a near total overhaul by the court.  At the end of the day, Plaintiff's proposed findings of fact and conclusions of law were essentially unusable.  Counsel's sloppiness forced the court to devote substantial hours and resources to try to piece together the evidence.

As previously noted, all of counsel's submitted billing descriptions are fairly generic, meaning that the court is unable to pinpoint and excise particular time records associated with the deficiencies described above.  *Christian Rsch. Inst*, 165 Cal. App. 4th at 1323.  Accordingly, the court applies an across-the-board 50 percent reduction to all timekeepers' hours.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend the judgment is granted in part and denied in part.  The judgment is amended in accordance with the parties' stipulated judgment (Docket No. 139), as follows:

The court awards Plaintiff Decatuer Carter a judgment of $5,267.10 as individual damages for missed meal breaks, unpaid overtime wages, waiting time penalties, and illegal wage deductions.  The court also awards a total of $36,400 in PAGA penalties, of which $27,300 shall be allocated to the California Labor and Workforce Development Agency and $9,100 shall be apportioned to individual aggrieved employees as follows, pursuant to California Labor Code section 2699(i):

- $29.24 to Decatuer Carter
- $51.16 to Marshal Agrharanya
- $226.59 to Alan Alfara
- $29.24 to Gebrielle Amare
- $285.06 to Naod Assefa

1    &bull; $548.19 to Christopher Beltre

2    &bull; $467.79 to Dijon Benefield

3    &bull; $394.70 to Brook Berhanu

4    &bull; $204.66 to Kamani Campbell

5    &bull; $665.14 to Serverino Cortez

6    &bull; $277.75 to Andrew Crowder

7    &bull; $29.24 to Luis Dominguez

8    &bull; $73.09 to Michael Embaye

9    &bull; $65.78 to Joshua Epps

10    &bull; $358.15 to Tominiko Fonohema

11    &bull; $285.06 to Franklin Quincy

12    &bull; $723.61 to Donald Gradford

13    &bull; $855.18 to Alauna Helu

14    &bull; $21.93 to Guillermo Herrera

15    &bull; $248.51 to David Hughes

16    &bull; $358.15 to Sione Maile

17    &bull; $21.93 to Angel Martinez

18    &bull; $73.09 to Keith Mayfield

19    &bull; $29.24 to Henry McKinley

20    &bull; $1067.15 to Mitchell Moore

21    &bull; $51.16 to Jared Moorehead

22    &bull; $29.24 to Ivanne Mora

23    &bull; $138.88 to Nemia Qoro

24    &bull; $380.08 to Willie Ray

25    &bull; $138.88 to Christopher Rosado

26    &bull; $95.02 to Joshua Sanchez

27    &bull; $226.59 to Todd Turnipseed

28    &bull; $219.28 to Ronald Vigil

United States District Court
Northern District of California

- $336.22 to Eric Williams
- $95.02 to Joshua Parshey

Defendants shall provide payments to JAI-PUT Enterprise's current employees within **fourteen days** of this order.  As to aggrieved former employees, Defendants must make diligent and documented efforts to locate them and promptly pay them what they are owed.  This includes the expenditure of additional resources to conduct a fulsome search for those individuals, using third-party search tools such as skip tracing if necessary.  Defendants shall file a sworn declaration on a monthly basis until all PAGA funds have been distributed.  The declaration shall explain which aggrieved employees were paid and when, and a detailed description of the efforts undertaken to locate each former aggrieved employee.  The first declaration is due on **October 31, 2022** with each subsequent report due on the last day of each month until all PAGA funds have been distributed.  If Defendants cannot locate a particular aggrieved former employee after a reasonable search, they may request the court's authorization to deposit the funds in the former employee's name with the California State Controller's Office so that the individual can later claim the funds; however, they must demonstrate how the steps they took to locate each individual was adequate and in accordance with the court's instructions.

As to the remaining disputes over locating and paying former aggrieved employees and Defendants' payment to the LWDA, the parties shall immediately meet and confer in accordance with the instructions above.  The court will decide based on Defendants' submission if additional efforts must be taken.

Plaintiff's motion for attorneys' fees is also granted in part and denied in part.  The court awards Carter's counsel **$173,435** in fees in accordance with the following calculations.

| Attorney | Adjusted Hours | Adjusted Billing Rates | Total |
|---|---|---|---|
| Jocelyn Burton | 156.3 | $850 | $132,855 |
| Scott Nakama | 20.4 | $325 | $6,630 |
| Mara Sackman | 105.3 | $300 | $31,590 |

United States District Court
Northern District of California

| Helen O'Keefe | 14.3 | $165 | $2,360 |
| | | | **$173,435** |

Finally, Plaintiff shall file proof within ten days that his counsel filed this order and the court's May 24, 2022 order with the LWDA.

**IT IS SO ORDERED.**

Dated: September 21, 2022



Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California